Godfrey (a slave) v. The State.

GODFREY (A SLAVE) *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Criminal responsibility of infant.*—An infant, between seven and fourteen years of age, is, *prima facie*, incapable of committing crime; but, if the evidence convinces the jury beyond a reasonable doubt, after allowing due consideration to his age, and to the additional fact that he is a slave, that he fully knew the nature and consequences of his act, and plainly showed intelligent design and malice in its execution, he may be convicted of murder.

From the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

THE prisoner in this case, who was a slave belonging to Mrs. Margaret Stuart, was indicted for the murder of a child named Lawrence Gomez, whose nurse he was; the child being four years and eleven months old at the time of the alleged murder.   The evidence adduced on the trial is thus stated in the bill of exceptions:

"―――― testified, that he was near the house where the deceased lived, and, hearing screams there, went to the house; that the child was on the floor, all bloody; that he was cut on the face and head, three cuts, and a bruise as if with the head of a hatchet; that it was said there, that defendant had said an Indian had done it; that they hunted for Indians, but could not find any; that the child died; that this was all in Mobile county, on the 30th April, 1857; that he saw tracks, as if the child had been running, and had been dragged along on the ground; that the defendant was bloody, on his shoulder, and on the back of his legs and feet; that the child was wet with water; that there was a hogshead of water in the yard; and that a hatchet was found, which was wet, and as if washed.

"*Gomez*, the father of the deceased: Defendant was bought, about one year ago, for eleven years old.   Believes that is his age.   When witness reached home, the child was all wet; his brain was projecting from his skull; he was cut in three places on the head, one on the back, one on the side, and one on the face, of which wounds he died.   There were two young Indian boys staying with Lawrence Broux, some 200 or 300 yards from the house of witness; they were never at witness' house before the killing; they came to see the child.

"*Jules Lenoir*: Knew Godfrey; saw him on the day the child was killed, and on the day before; he was flying a kite, which fell in witness' garden, and he came into the yard to get it.   When they had gone out, the child tried to take the string; Godfrey threw brick-bats at him, and knocked him down; and witness then went out, and made him go off.   Godfrey said, he would kill him any way. On the day of the killing, witness heard a cry at the house of Gomez, and went over there; saw blood in the yard,

near the gate, and a trace on the ground as if a body had been drawn along on it; saw the hogshead of water; went into the house, and saw the child, (describing it as before;) and saw a hatchet that had some blood on it. Defendant had blood on his shirt, pantaloons, and feet. There were no Indians about there, except at the house of Broux. Godfrey was in a passion when he said he would kill the child. When witness went to the house of Gomez, all the witnesses now here were there; saw the hatchet wet; the child was wet all over; the defendant was wet on the legs.

"*Lawrence Broux :* Had two little Indian boys living with him, who were with him when he heard the screams at the house of Gomez, and had been with him all the morning. Heard Mrs. Gomez screaming, 'My child is dead,' and ran over there. Defendant said, that an Indian had done it. Witness asked him where the Indian was; and he replied, that 'he was a man and ran that way,' pointing. Saw the axe; no blood on it, except at the eye. Saw the child, (described as before,) the blood in the yard, and where it appeared as if the body had been drawn on the ground. Defendant is a smart, intelligent boy; 'heap smarter than boys of twelve years generally are.' Defendant said that the Indian ran into the yard where the wood-pile was, and took the axe and killed the child.

"*Juzan* testified like the others; except that he said, he heard the child cry out, and crying as if he was moving from one place to another while crying.

"*Joseph Broux :* Is thirteen years old. Knew Godfrey and the child Lawrence, and often played with them. On the day of the killing, in the evening, Godfrey said, that he had killed Lawrence because he had broken his kite, and he would do it again if they did not hang him.

"*Calderon :* Heard Lawrence crying, but was busy, and did not look until he heard Mrs. Gomez cry out, when he went over to the house. (Testified as the others had done, except that he saw Godfrey and Lawrence together shortly before.) Godfrey said, that an Indian had killed him with a hatchet.

"*Mrs. Gomez*, the mother of the deceased child, testified, that the defendant had care of the children ; that she had gone across the street to visit a neighbor, and had left the deceased with the defendant ; that she had been gone but about five minutes, when she heard screams, and Godfrey came to her, saying that Lawrence had been saucy to an Indian, and that the Indian had killed him with an axe, and had left him in the gutter by the side of the road ; that she went home, and found the child in the yard, lying near by a barrel of water, and in the condition described by the other witnesses.

"*Wm. Sampson*, on the part of the defendant, testified, that the boy had been a good deal at his house, but not within the past two years and six months ; that he thought his disposition was kind and gentle, and that he was about ten years and six months old. Some of the witnesses testified, that he was very smart of his age. It appeared, also, that no Indian had been about there on that day, except the boys of Broux.

"*Mrs. Cox* testified, that she had owned the boy, and sold him to Mrs. Stuart, the grandmother of the deceased, about one year ago ; that he is ten or eleven years of age in July, 1857 ; that he was the nurse of her child ; that she never saw anything unkind from him to the child ; that she never saw any bad temper about him ; and that he did not seem to be very smart, but about as boys usually are.

"The court charged the jury, among other things, that if they were satisfied that the defendant was the guilty agent, and that the charge was established as alleged in the indictment, they must ascertain whether the defendant was of sufficient age and intelligence to be capable of committing the offense, and to be held accountable for his acts ; that no one under the age of seven years should be held responsible for the commission of a felony ; that from seven to fourteen years of age, the presumption was that a child had not sufficient discretion or judgment to be held accountable for his acts, when charged with a felony, but that this presumption might be rebutted by evidence ; that they must take into consideration his con-

dition as a negro and a slave, with all the evidence in the case; and that unless [they were satisfied from the evidence] that he was fully aware of the nature and consequences of the act which he had committed, and had plainly shown intelligent malice in the manner of executing the act, they should render a verdict of not guilty; but if, on the whole evidence, they were satisfied beyond a reasonable doubt that he was fully aware of the nature and consequences of the act which he had committed, and had plainly shown intelligent design and malice in its execution, they would be authorized to return a verdict of guilty."

The jury returned a verdict of "guilty as charged in the indictment;" but the presiding judge, being in doubt as to the propriety of passing sentence under the circumstances of the case, reserved the question for the decision of the appellate court. By consent of the attorney-general, entered on the transcript, the cause was considered as regularly before the appellate court by writ of error, and as if an exception had been reserved by the prisoner to the charge of the court.

WALKER, J.—The single point to be considered in this case is, whether the charge of the court below to the jury was correct. An analysis of that charge shows that the jury were distinctly instructed, that the defendant, being between seven and fourteen years of age, was, *prima facie*, incapable of committing crime; that to overturn the intendment in favor of his incapacity to commit crime, the jury must be convinced from the evidence beyond a reasonable doubt, after allowing due consideration to the fact that the accused was a negro and a slave, that he knew fully the nature of the act done, and its consequences; and that he showed plainly intelligent design and malice in the execution of the act. This charge, after anxious and careful examination of it, we can not pronounce erroneous.

An infant, above seven, but under fourteen years of age, is presumed not to have such knowledge and discretion, as would make him accountable for a felony committed

during that period. But, if that presumption is met by evidence clearly proving the existence of that knowledge and discretion deemed requisite to a legal accountability, the reason for allowing an immunity from punishment ceases, and, with it, the rule which grants such immunity ceases. There are many cases where children between those ages, being shown to have been cognizant of the criminal nature of the act done, have been punished under the criminal law. A girl, thirteen years of age, was executed for killing her mistress. Two boys, one nine, and the other ten years of age, were convicted of murder, because one of them hid himself, and another hid the dead body; thus manifesting, as was supposed, a consciousness of guilt, and a discretion to discern between good and evil. A boy of eight years of age, who had malice, revenge, and cunning, was hanged for firing two barns. A boy ten years old, who showed a mischievous discretion, was convicted of murdering his bed-fellow. 4 Bla. Com. 23–24.

In the case of Rex v. Owen, 2 Car. & P. 236, it was referred to the jury, to determine whether the act of a girl ten years old, alleged to constitute a larceny, was known by her to be wrong when it was done; and, upon that question, she was acquitted. It is said in Hale's Pleas of the Crown, page 22, that one between the ages of seven and fourteen might be convicted of a capital offense, "if it appeared by strong and pregnant evidence and circumstances that he was perfectly conscious of the nature and malignity of the crime." In an American case the same principle is thus stated : "If it shall appear by strong and irresistible evidence that he had sufficient discernment to distinguish good from evil, to comprehend the nature and consequences of his acts, he may be convicted, and have judgment of death."—State v. Aaron, 1 Southard, (N. J.) R. 231. In that case, a negro boy, who was a slave, of eleven years, was convicted of murder; but a new trial was granted on account of an erroneous ruling as to the competency of a witness, and it does not appear what farther was done in the case.

In the case of the State v. Guild, 5 Halst. 163, a negro

slave, of less than twelve years, was convicted of murder; and the report of the case informs us, that the defendant was executed. In that case, the court, dissenting from the cautious statement of the law found in Hale's Pleas of the Crown, (vol. 1, p. 27,) permitted a conviction upon confessions. In this case, although a confession was given in evidence, the facts proved established the guilt of the accused so clearly, that it is fairly inferrible that no importance was attached to it by the court or jury, and its effect is not noticed in the charge. The question, whether a conviction could be had upon confessions, does not arise, and we do not commit ourselves to the doctrine of the decision last above cited upon that point.

All the authorities concur in maintaining the correctness of the propositions of law involved in the charge.—Bishop on Criminal Law, §§ 283, 284, 285; 1 Archbold's Crim. Pl. 3, 4, and 5, and notes; 1 Russell on Crimes, 3, 4, and 5; Roscoe's Crim. Ev. 942, 944; Wharton's Am. Crim. Law, 51; 1 Wheeler's Crim. Cases, 231 to 234. Reason, humanity, and the law, alike required that the court should, in its charge, throw around the jury every guard and restriction necessary to prevent an improper conviction in such a case. This has been carefully done by the court in this case, and we are bound to pronounce a full approval of the charge.

The judgment of the city court is affirmed, and its sentence must be executed.