268 A.2d 723.

STATE *vs.* ROBERT TURNER.

STATE *vs.* VINCENT CLEMENT.

AUGUST 11, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an appeal taken by two juveniles from a decision of the then Chief Judge of the Family Court adjudicating them to be "delinquent" and "way-

ward" within the meaning of G. L. 1956 (1969 Reenactment) §14-1-3.[1]

A recital of the appellants' conduct on which the then Chief Judge reached his decision is not necessary. Suffice it to note that the finding of delinquency was based on conduct which, if proved, would constitute robbery, while the finding of waywardness was based on conduct which, if proved, would constitute an assault.

As a consequence of the then Chief Judge's decision, both appellants were ordered detained at the Rhode Island Training School for Boys on July 2, 1968, until further order of the court. The record indisputably establishes that the then Chief Judge based his decision on evidence which he labels "clear and convincing." It is on appellants' contention that they were denied due process in that the adjudications of "delinquent" and "wayward" were not based on a finding of guilt beyond a reasonable doubt

---

[1]This section defines such terms as follows:

"F. The term 'delinquent' when applied to a child shall mean and include any child—

Who has committed any offense which, if committed by an adult, would constitute a felony, or who has on more than one (1) occasion violated any of the other laws of the state or of the United States or any of the ordinances of cities and towns, other than ordinances relating to the operation of motor vehicles."

"G. The term 'wayward' when applied to a child shall mean and include any child—

1. Who has deserted his home without good or sufficient cause; or

2. Who habitually associates with dissolute, vicious or immoral persons; or

3. Who is leading an immoral or vicious life; or

4. Who is habitually disobedient to the reasonable and lawful commands of his parent or parents, guardian or other lawful custodian; or

5. Who, being required by chapter 19 of title 16 to attend school, wilfully and habitually absents himself therefrom, or habitually violates rules and regulations of the school when he attends.

6. Who has on any occasion violated any of the laws of the state or of the United States or any of the ordinances of cities and towns, other than ordinances relating to the operation of motor vehicles."

that the instant appeal was prosecuted. In support of this position, appellants rely on *In re Winship,* 397 U. S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. There, the Court held that the constitutionally mandated due process of requiring extreme caution in the fact-finding process to protect the innocent adult, applies with equal force to the innocent child.

However, on October 15, 1968, while the instant appeal was pending, appellants were ordered released from the training school and placed on probation from which they were subsequently discharged.[2] Consequently, when the cause was argued in this court on May .7, 1970, the Attorney General took the position that the appeal should be denied and dismissed on the ground that appellants' release from custody rendered their appeal moot, citing *Cochrane* v. *Langlois,* 104 R. I. 522, 247 A.2d 91. There, Cochrane, a juvenile had been ordered detained in the training school for boys and while so detained became the subject of disciplinary action. Pursuant to the provisions of G. L. 1956 (1969 Reenactment) §13-4-12, Cochrane was transferred from the training school to the Adult Correctional Institutions. While there he applied to this court for a writ of habeas corpus challenging the respondent warden's authority to hold him in the Adult Correctional Institutions. We issued the writ but before the cause could be argued, Cochrane was ordered returned to the training school as a consequence of a hearing held in the Family Court. Since the thrust of Cochrane's application for release by way of habeas was to question the validity of his detention in the Adult Correctional Institutions, we held that his release from the warden's cus-

---

[2]Even so, the record establishes that Turner will not attain his majority until September 24, 1972, nor Clement until August 15, 1974. The Family Court having obtained jurisdiction while they were juveniles, such jurisdiction is retained until they reach 21 years of age. G. L. 1956 (1969 Reenactment) §14-1-6.

tody rendered that question moot. But compare *Lemme* v. *Langlois,* 104 R. I. 352, 244 A.2d 271.

The instant appeal, appellants vigorously contend, presents a totally different question which, in light of *Sibron* v. *New York,* 392 U. S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, entitles them to an appellate review of the validity of the then Chief Judge's adjudications that they had been proven to be "delinquent" and "wayward." Notwithstanding their release from custody, they contend, the adjudications under assault remain open to possible collateral legal consequences, which, in *Sibron* v. *New York, supra,* the United States Supreme Court concluded, kept a criminal appeal viable.

In *Sibron,* the Court reviewed its previous holdings on the question of mootness and spelled out what was a demonstrably expanding rule against mootness.

The state argues, however, that there are no possible collateral legal consequences that can flow from the adjudications sought to be reviewed. In this they rely on G. L. 1956 (1969 Reenactment) §14-1-40. It provides:

> "Adjudication not having effect of conviction. — No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily resulting from a conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any child be charged with or convicted of a crime in any court, except as provided in this chapter. The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding *in any other court,* nor shall such disposition or evidence operate to disqualify a child in any future civil service application, examination or appointment." (emphasis ours)

While the foregoing must be conceded to be a strong legislative attempt to cloak a juvenile with full protection

against all possible collateral legal consequences, we are not persuaded that it provides the total protection contemplated in *Sibron*. Without attempting to explore all of the possible adverse consequences with which the instant appellants might be suffered to endure as a result of the outstanding adjudications of which they complain, we note that there is no prohibition in §14-1-40, which precludes the Family Court from taking these adjudications into consideration in the event that appellants, or either of them, should again be referred to that court for some alleged subsequent misconduct. Stated otherwise, we think that fidelity, in a legal sense, of the Family Court records, as they relate to the instant appellants, is sufficient to justify a conclusion that the instant appeal is not moot.

This brings us to a consideration of the appeal on its merits. The state does not argue that, a finding of guilt by clear and convincing evidence is a finding made on proof beyond a reasonable doubt, nor could it. It is manifest from a reading of the then Chief Judge's decision that, while he believed that the evidence should be consistent with something more than the fair preponderance standard, his decision is not clearly demonstrable of the proposition that, the evidence which he found clear and convincing caused him to reach his decision out of a conviction that there was proof beyond a reasonable doubt. Rather, we think it clear that he applied a standard of proof lying somewhere between fair preponderance and reasonable doubt. This being so, we are bound by the holding in *In re Winship, supra,* to conclude that the adjudications from which the instant appeal was taken constituted a denial of due process.

The state does argue, however, that the holding in *Winship* should not apply retrospectively. The hearing from which the instant appeal was taken was held some 20 months prior to the filing of *In re Winship* on March 31,

1970. Whatever merit this contention might have in a case where final adjudication preceded *Winship,* we do not inquire since *Winship* became binding on the states at a time when the instant appeal was pending. In such circumstance, we are clearly of the opinion that the instant appellants are entitled to the protection *Winship* was designed to provide.

Neither do we find it necessary to consider the state's remaining contention, namely, that we are not bound by *Winship* to make the beyond a reasonable doubt standard applicable to all hearings in the Family Court. Here, the delinquency and waywardness with which the appellants were charged in the Family Court arose out of conduct which, if appellants had been adults, would have resulted in their being charged with robbery and assault respectively. Hence, the state's contention that conduct of a juvenile, not amounting to a violation of a state statute or city ordinance, may warrant Family Court intervention for something less than proof beyond a reasonable doubt is academic to these proceedings.

The appeal as to each appellant is sustained, and the cause is remanded to the Family Court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*Richard A. Ciccone,* for defendants.