MATTER OF BRYAN GARLAND DAVIS

[No. 401, September Term, 1972.]

*Decided February 5, 1973.*

The cause was argued before ORTH, C. J., and POWERS and SCANLAN, JJ.

*Solomon Reddick* for appellant.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *John Dunnigan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## I

Under the common law there is a presumption of criminal incapacity on the part of an infant below the age of fourteen, which is conclusive prior to the age of seven and rebuttable thereafter. When the presumption of *doli incapax* is rebuttable, the burden of rebutting it is on the State. *Prevatte v. Director,* 5 Md. App. 406, 412.[1]

BRYAN GARLAND DAVIS, born 30 June 1959, would like to invoke the *doli incapax* rule in juvenile proceedings. He was found to be a delinquent child in the Circuit Court of Baltimore City, Division of Juvenile Causes (Juvenile Court) on 20 June 1972 and placed on probation. The petition against Davis, filed by the State's Attorney, alleged that he was a delinquent child for the reason that on 20 May 1972 he, "in company with Allen Lorenzo Floyd, unlawfully did, or attempt to, steal, take and carry away the goods, chattels, moneys and property of Master John O'Grady, to wit: by attempting to force the right front vent with a brick, 1965 Buick."

---

1. "It is generally held that the presumption of *doli incapax* is 'extremely strong at the age of seven and diminishes gradually until it disappears entirely at the age of fourteen * * *.' Since the strength of the presumption of incapacity decreases with the increase in the years of the accused, the quantum of proof necessary to overcome the presumption would diminish in substantially the same ratio." *Adams v. State,* 8 Md. App. 684, 688-689.

A declared purpose of the Juvenile Causes Act is "To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior, and to substitute therefor a program of treatment, training, and rehabilitation consistent with the protection of the public interest." Code, Art. 26, § 70 (2). The Act shall be liberally construed to effectuate its purposes. § 70. A child means a person who has not reached his 18th birthday, § 70-1 (c).[2] A delinquent child means a child who commits a delinquent act and who requires supervision, treatment, or rehabilitation, § 70-1 (h). A delinquent act includes an act which would be a crime if done by a person who is not a child, § 70-1 (g). Thus the statute is more lenient than the common law with respect to an infant who commits a crime, for under it, a person up to the age of 18 years may be protected from the taint of criminality. So the statute bestows on a juvenile court [3] exclusive original jurisdiction over persons alleged to be delinquent children, § 70-2 (a) (1), with certain exemptions. A juvenile court does not have jurisdiction over a proceeding involving a child who has reached his 14th birthday, alleged to have done an act which, if committed by an adult, would be a crime punishable by death [4] or life imprisonment (including a lesser offense or an offense arising out of the act alleged to have been committed), unless an order removing the proceeding to the juvenile court has been filed by the court exercising jurisdiction. § 70-2 (d) (1). See Code, Art. 27, § 594A; note 5, *infra.* And a juvenile court may waive its exclusive original jurisdiction, but only on (1) a child who has reached his 14th birthday, or (2) a child who has not reached his 14th birthday who is charged with committing an act which, if committed by an adult,

---

2. In determining the jurisdiction of a juvenile court over persons alleged to be delinquent children, the age of the child at the time the alleged delinquent act was committed is controlling. Code, Art. 26, § 70-2 (e) (1).

3. For those courts having jurisdiction in juvenile causes see Code, Art. 26, § 51.

4. See *Bartholomey v. State,* 267 Md. 175, construing and applying *Furman v. Georgia,* 408 U. S. 238.

would be punishable by death (see note 4, *supra*) or life imprisonment. Code, Art. 26, § 70-16. See *Aye v. State,* 17 Md. App. 32; *Matter of Waters,* 13 Md. App. 95.

What Davis urges is that because he was 12 years of age at the time he committed the delinquent act, and because that act, which was the basis of the finding that he was a delinquent child, would be a crime if done by a person not a child, the burden was on the State to rebut the presumption of his criminal incapacity before he could be found to be a delinquent child. He claims error for the reason that, over his objection, the State did not meet this burden.

The common law, like Acts of Assembly, is subject to the control and modification of the legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare. *State v. Buchanan,* 5 H. & J. 317, concurring opinion of Chief Judge Chase, at 365-366. The rule that the common law is subject to change by the legislature was stated and applied in *Heath v. State,* 198 Md. 455, 464, and *Robb v. State,* 190 Md. 641, 650. We recognized the rule in *State v. Magliano,* 7 Md. App. 286.

The Juvenile Causes Act has in effect changed the substantive law itself. When a juvenile court has exclusive original jurisdiction over a person alleged to be a delinquent child and does not waive that jurisdiction, or when a proceeding charging a person meeting the definition of a delinquent child has been removed to a juvenile court by order of the court exercising jurisdiction, the result, stated in terms of the common law, is that the age under which a person is *conclusively presumed* to be incapable of committing a crime has been raised from seven to eighteen.[5] The transgression by the child is not a crime

___

5. Although not pertinent in the factual posture of the case here reviewed, we note that a juvenile court does not have jurisdiction over a "proceeding involving a child who has reached his 16th birthday, alleged to have done an act in violation of any provision of Article 66½ or any other traffic law or ordinance (other than manslaughter by automobile, possession of a stolen motor vehicle, unauthorized use or occupancy of a motor vehicle, tamp-

at all, but a different kind of misdeed known as a "delinquent act." See Perkins, *Criminal Law*, 2d ed., ch. 8, § 1, pp. 843-844. This is in accord with the previous holdings of the Court of Appeals and this Court, that juvenile proceedings are of a special nature designed to meet the problems peculiar to the adolescent (*In Re Fletcher*, 251 Md. 520) ; that the proceedings of a juvenile court are not criminal in nature and its dispositions are not punishment for crime (*In Matter of Cromwell*, 232 Md. 409) ; that the juvenile law has as its underlying concept the protection of the juvenile, so that judges, in making dispositions in juvenile cases, think not in terms of guilt, but of the child's need for protection or rehabilitation (*In Re Johnson*, 254 Md. 517). See *Matter of Wooten*, 13 Md. App. 521; *In Re Arnold*, 12 Md. App. 384; *In Re Hamill*, 10 Md. App. 586. No disposition of any juvenile proceedings with respect to a child shall be deemed a conviction of crime or impose any civil disabilities ordinarily resulting from such a conviction. No child shall be committed or transferred to a penal institution or other facility used primarily for the execution of sentences of persons convicted of a crime. The proceedings with reference to a child in the juvenile court shall not be admissible as evidence against him in any criminal proceeding, other than a charge of perjury, except after conviction in proceedings to determine his sentence. Code, Art. 26, § 70-21.

It being clear that the finding in a juvenile proceeding

---

ering with a motor vehicle, or a violation of § 11-902 of Article 66½)". Code, Art. 26, § 70-2 (d) (2). The last exception formerly read "or operating a vehicle under the influence of intoxicating liquor or drugs." It was changed by ch. 225, Acts 1972, effective 1 July 1972.

Acts 1972, ch. 514, effective 1 July 1972 and to be applied only prospectively, adds a third exemption to the jurisdiction of a juvenile court as paragraph (3) of subsection (d) of § 70-2:

"A proceeding involving a child who has reached his sixteenth birthday, alleged to have done an act in violation of § 488 of Article 27 concerning the crime of robbery with a deadly weapon, unless an order removing the proceeding to the juvenile court has been filed pursuant to § 594A of Article 27."

that a child is delinquent is not the equivalent of a determination arrived at in a criminal proceeding that he has committed a crime, it follows that it is not a prerequisite to a finding that a person is a delinquent child that the State show under the common law rule that the child had such maturity in fact as to have a guilty knowledge that he was doing wrong, that is the capacity to commit crime. Under the statute, by its purpose and the very principles it advances, the child under the jurisdiction of a juvenile court is conclusively presumed *doli incapax*. The child is delinquent, not because he committed a crime, but because he committed an *act* which would be a crime if committed by a person who is not a child, and because he requires supervision, treatment or rehabilitation. He must be *doli capax* to commit a crime, but not to commit a delinquent act. The *raison d'etre* of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws.

We hold that the common law rule concerning presumption of criminal incapacity is not applicable to juvenile proceedings with respect to the determination of delinquency *vel non*.

## II

Davis contends that the evidence was not sufficient to prove that he was a delinquent child. The contention as argued goes only to the first aspect of the definition of "delinquent child", the commission of a delinquent act, and not to the second, whether he required supervision, treatment or rehabilitation.

The petition against Davis was jointly heard with petitions filed against Allen Lorenzo Floyd. Two Baltimore City police officers were called by the State. Officer Joseph Collins testified that he arrested Floyd and Davis on 30 May 1972 about 11:30 a.m. He recounted the circumstances:

"* * * I was going down Fallsway to get gas with Officer Dodson. We were progressing east on Mulberry Street and as we approached St. Paul Street we made a right hand turn going south. As we made the right hand turn, I observed Mr. Floyd and * * * and Mr. Davis standing on the passenger side of the 65' Buick and they were standing on the sidewalk and Floyd had in his hand a brick and he was banging on the right wing window of the Buick. And about this time that I observed the two subjects, Davis looked up in our direction and he said something to Floyd and then they proceeded on down to a park. There is a park right there on St. Paul Street and they proceeded on down to the park and Floyd chucked the brick into the bushes. So, we came around and made a U-turn and came around and looked over and we saw them going on down towards Fallsway. So, we went over the Orleans Street bridge and as we cruised the area we observed them at Bath and Fallsway and at this time we placed the two subjects under arrest."

At the time of the arrests a knife, with a quick opening device, and a set of keys were found on the person of Floyd. In the set of keys were two General Motors automobile keys—"One is for the ignition and one is for the control (sic)." At the time Floyd was using the brick on the vent Davis was at his immediate left, about two feet away. The officer made a positive judicial identification of Floyd and Davis as the persons he saw at the car and arrested. On cross-examination he characterized the departure of Davis and Floyd from the scene upon the arrival of the police as a hasty retreat. In the officer's opinion Davis was a lookout.

Officer Robert Dodson's version of the incident was in substance the same as that of Collins. Dodson examined the car. "I saw fresh reddish brick dust on the vent win-

dow, like down a little slope which leads to the door down the side of the car and also below the vent window there was rubber, about a half inch strip, that was picked out or forced out some way. There was scratches on it where the brick had been forced against it."

Floyd, testifying for the defense, admitted that he and Davis were at the scene but denied any attempt to break into the car. He said he and Davis were talking when a third boy, identity unknown, walked up to the car and banged on the vent with a brick. Asked about the keys on cross-examination, he said: "I did have the set of keys and the majority of them was house keys, my father's, my sister's, and a lock key, and the two General Motors keys, they were just on them. I just found them around my house." His father drove a Chrysler automobile. Davis elected not to testify.

Davis argues that the evidence was insufficient because (1) the opportunity of the officers to observe the car was "questionable"; (2) there was no testimony he participated in an illegal act; (3) it was impossible to determine whether he was convicted of "attempted larceny of the Buick or attempted larceny of its contents, or tampering or malicious destruction of property"; (4) the testimony of the officers was contradictory; and (5) the State failed to produce the "demonstrative evidence", that is the brick and the rubber molding.

The first and fourth reasons advanced by Davis go to the weight of the evidence and the credibility of the witnesses, matters for the trier of fact. *Rettman v. State*, 15 Md. App. 666. It is within the province of the trier of fact to resolve conflicts in the evidence. *Jones v. State*, 8 Md. App. 370, 374. As to the third, we think the evidence was sufficient in law to show that the act committed would be, if committed by a person not a child, attempted larceny of the property of another, be it the automobile or its contents. As to the fifth reason, the production of the tangible evidence was not essential to the conviction. The observations of the officers concerning such evidence were sufficient. *Wells v. State*, 8 Md. App. 510, 518;

*Lamot v. State,* 2 Md. App. 378, 382-383. With respect to the second reason, the judge below found that Davis being at the scene of the incident was more than mere presence. It was "quite clear" to the judge that Davis "was aiding and abetting Allen. He was acting as or in the nature of a lookout." The testimony of the police officers was legally sufficient to support these findings. We believe that the evidence adduced was sufficient in law to prove beyond a reasonable doubt the allegations which were the basis of the determination that Davis was delinquent. Code, Art. 26, § 70-18 (a). Therefore, the judgment of the hearing judge on the evidence was not clearly erroneous, and we may not set it aside. Maryland Rule 1086.

*Judgment affirmed.*