**In re MICHAEL.**

**No. 78–426–Appeal.**

Supreme Court of Rhode Island.

Jan. 8, 1981.

Dennis J. Roberts II, Atty. Gen., Judith Crowell, Sp. Asst. Atty. Gen., for appellee.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for appellant.

OPINION

KELLEHER, Justice.

This Family Court appeal concerns a delinquency petition filed against Michael, a twelve-year-old. The petition alleged that Michael raped a five-year-old girl. Michael was adjudicated to be wayward rather than delinquent because the trial justice, while being convinced that Michael had assaulted the girl, was doubtful that a rape had occurred. An order was entered that Michael be confined to the Rhode Island Training School for Boys for a year. Since the question is whether Michael was criminally "responsible" for his actions, it is necessary that we give a brief synopsis of the evidence adduced at the Family Court hearing.

The young girl testified that as she was walking home, a boy joined her. He asked her to go into the park with him to look for birds' eggs. Alone inside the park, he asked her to lie down, which she did. The boy then pulled up her dress and pulled down her underwear. The young girl had difficulties discussing exactly what happened after this. It is clear that she did scream at one point.

As the two youngsters left the wooded area of the park, they met Patrolman George Bassett of the Providence police department, who was investigating screams he had heard. Michael told Patrolman Bassett that they were searching for birds' eggs. The girl's version was quite different. She told the officer that Michael had taken her up there to look for birds' eggs, but that he had been knocking her down and hurting her.

The examining physician testified that the girl's vaginal and perineal areas were very reddened and painful to the touch. The girl also had bruises on her cheek and on both knees.

■ Initially, we note that although Michael's one year of confinement has long since expired, his appeal is not moot. His confinement may not be the sole consequence of his act here. The Family Court is allowed to take Michael's adjudication of waywardness into consideration in the event that he should be referred to that court for some alleged subsequent misconduct. State v. Turner, 107 R.I. 518, 268 A.2d 732 (1970). The "wayward" adjudication could also be used to impeach Michael under certain limited conditions should he be a witness for the prosecution at a criminal trial in the future. State v. Myers, 115 R.I. 583, 350 A.2d 611 (1976). Thus, the appeal is still viable since the finding of waywardness carries with it several possible collateral legal consequences. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

As noted before, the only issue before us is the claim made on Michael's behalf that the state failed to prove that Michael had the requisite capacity to commit the crime for which he was adjudged wayward. Michael's counsel contends that the common-law presumption of a minor's incapacity to commit a crime should be applied to juvenile proceedings and that the state failed to rebut that presumption.

At common law a child under seven was *conclusively presumed* to be incapable of committing a crime. Between the ages of seven and fourteen, the child was *presumed* to be incapable of crime. LaFave & Scott, *Criminal Law* § 46 at 351–52 (1972). The presumption was rebuttable by evidence that established that the child knew what he was doing and was aware that it was wrong.[1] *Adams v. State*, 8 Md.App. 684,

---

1. "The burden of proof in overcoming the presumption is on the prosecution, although there is not complete agreement on what exactly must be proved. Various phrases have been

688, 262 A.2d 69, 72 (1970). The weight of the presumption decreases as the child approaches fourteen. *Id.* at 688–89, 262 A.2d at 72.

The common-law principle that a child between the ages of seven and fourteen is presumed incapable of committing a crime has been the law in Rhode Island. This presumption applied to criminal proceedings against a child. *State v. Mariano,* 37 R.I. 168, 91 A. 21 (1914); *State v. McDonald,* 14 R.I. 270 (1883).

This common-law rule prevailed when children were punishable to the same extent as adults.[2] With the enactment of the Juvenile Court Act of 1915, P.L. 1915, ch. 1185, juveniles were defined as children under the age of sixteen and, with the exception of murder and manslaughter, were immune from criminal prosecution. A juvenile offender was to be referred to "a juvenile court," which would be presided over by a judge of the District Court. The 1915 legislation made it clear that although children coming before the newly established tribunal would be considered as "delinquent" or "wayward," any judgment or order entered against them would not be considered a conviction, nor would such a child be considered a "criminal."

Later, in 1944, the General Assembly enacted a second Juvenile Court Act, P.L. 1944, ch. 1441, and created the Juvenile Court. A juvenile was identified as a child under the age of eighteen, and juveniles charged with being delinquent or wayward would be subject to the jurisdiction of the Juvenile Court. Subsequently, in 1961, when the Family Court was established, the identical juvenile jurisdiction formerly exercised by the Juvenile Court was transferred to the new court with the passage of the Family Court Act, P.L. 1961, ch. 73.

Long ago the United State Supreme Court recognized that the common-law presumption about the age of criminal responsibility could be changed by statute. *Allen v. United States,* 150 U.S. 551, 558, 14 S.Ct. 196, 198, 37 L.Ed. 1179, 1182 (1893). In *Allen,* an Arkansas statute stipulated that "'[a]n infant under twelve years of age shall not be found guilty of any crime or misdemeanor * * *.'" The Court ruled, however, that, notwithstanding the statute, the common-law presumption that persons between the ages of twelve and fourteen were incapable of discerning the difference between good and evil until the contrary is affirmatively shown still prevailed.

 Rhode Island, we believe, is to be listed among the states in which the common-law presumption regarding criminal responsibility has been superseded by statute. Today, no child under the age of sixteen can be charged or convicted of a crime, nor does the adjudication of delinquency or waywardness for the commission of an offense that, if committed by an adult, would be a felony or other violation of law operate as a conviction or impose any civil disabilities usually resulting from such a conviction. General Laws 1956 (1969 Reenactment) § 14–1–40. A child between the ages of sixteen and eighteen is also statutorily protected except that under certain circumstances such an individual may be treated as an adult in the criminal courts. General Laws 1956 (1969 Reenactment) §§ 14–1–7 and –7.1 (1980 Cum. Supp.).

We have recognized in *State v. Berard,* R.I., 401 A.2d 448, 453 (1979), and *In re*

---

used to describe what is required: guilty knowledge of wrongdoing, a mischievous inclination, an 'intelligent design and malice in the execution of the act,' a consciousness of the wrongfulness of the act, and knowledge of good from evil. However, 'the most modern definition of the test is simply that the surrounding circumstances must demonstrate * * that the [individual knew what he was doing and that it was wrong].'" LaFave & Scott, *Criminal Law* § 46 at 351–52 (1972) [footnotes omitted].

2. "The early common law infancy defense was based upon an unwillingness to punish those thought to be incapable of forming criminal intent and not of an age where the threat of punishment could serve as a deterrent. The rebuttable presumption was explained on the ground that failure to punish particularly atrocious acts by those between the ages of seven and fourteen would encourage other children to commit them with impunity." LaFave & Scott, *Criminal Law* § 46 at 352 [footnotes omitted].

*Correia*, 104 R.I. 251, 243 A.2d 759 (1968), that the Rhode Island Legislature has the power, in the exercise of its wisdom, to withhold the protection of parens patriae from all juveniles over fifteen years of age when it authorized the Family Court to waive its jurisdiction over juveniles sixteen years of age or older. It is our belief that the General Assembly, by the enactments to which we have referred, has modified the common law so that the age under which a person is conclusively presumed to be incapable of committing a crime has been raised from seven to fifteen. *See In re Davis*, 17 Md.App. 98, 102, 299 A.2d 856, 859 (1973).

Once one accepts the principle that a finding of delinquency or waywardness in a juvenile proceeding is not the equivalent of a finding that the juvenile has committed a crime, there is no necessity of a finding that the juvenile had such maturity that he or she knew what he or she was doing was wrong. A juvenile is delinquent or wayward, not because the juvenile has committed a crime, but because the juvenile has committed an act that would be a crime if committed by a person not a juvenile and because the juvenile requires "such care, guidance and control * * * as will serve the child's welfare and the best interests of the state * * *." General Laws 1956 (1969 Reenactment) § 14-1-2.

We would point out that the common-law presumption regarding an infant's incapability of committing a crime plays a minor role in a juvenile proceeding. What is important is the nature of the rights given to a juvenile charged with committing a wayward or delinquent act. Paramount among these is the juvenile's right that every element of the offense that gave rise to the delinquency or waywardness charge be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Once this right is recognized, it is clear that any adjudication of delinquency or waywardness must rest upon a finding beyond a reasonable doubt that the juvenile had formed whatever criminal intent or mens rea was an element of the offense that gave rise to his being before the Family Court.

Our reference to mens rea reminds us that there was two categories of mens rea: mens rea in its special sense refers only to the mental state that is required by the definition of the offense to accompany the act that produces or threatens the harm—without this intent there can be no criminal responsibility for the act in question; the second category refers to the question of legal responsibility for one's acts and includes the defenses of what might be called infancy and insanity. *In the Matter of Andrew M.*, 91 Misc.2d 813, 398 N.Y.S.2d 824 (1977).

Recently, in *State v. Doyon*, R.I., 416 A.2d 130 (1980), we recognized the difference between crimes requiring proof of a specific intent and those requiring proof of a general intent. A general-intent offense, we said, merely requires proof that the defendant intended to do the proscribed act, that it was done unlawfully, and that it was not done inadvertently. We also pointed out in *Doyon* that the doctrine of diminished capacity was not a defense to a general-intent crime. We cited with approval *People v. Rocha*, 3 Cal.3d 893, 479 P.2d 372, 92 Cal. Rptr. 172 (1971), where the California Supreme Court classified simple assault or assault with a dangerous weapon as general-intent crimes. The court in *Rocha* pointed out that proof of an intent to inflict a particular injury or severely injure another was not needed.

Here, even though Michael might be immune from criminal prosecution because of his age, there is ample evidence that he intended to do the proscribed act, that the act was unlawful, and that it was not done inadvertently. Michael's invitation to "catch birds' eggs," the five-year-old's testimony, the screams heard by the police officer, and the findings of the five-year-old's physical examination provided proof beyond a reasonable doubt that an assault had occurred and that Michael was the assaulter.

Michael's appeal is denied and dismissed.