548 A.2d 130

**In re WILLIAM A.**

**No. 146, Sept. Term, 1986.**

Court of Appeals of Maryland.

Oct. 13, 1988.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender and Arthur A. Delano, Jr., Asst. Public Defender, on the brief), Baltimore, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., on the brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

ELDRIDGE, Judge.

This case presents the question of whether the common law infancy defense is applicable in juvenile delinquency proceedings.

On July 6, 1984, the defendant, William A., accompanied his father and uncle to a food warehouse in Baltimore City. There, his father and uncle cut and removed copper piping from the premises. William assisted by carrying various materials from the storage facility. When the police arrived, they observed William's father and uncle carrying copper piping from the premises and William carrying a box of paper for a copying machine.

A second incident occurred on September 25, 1984. On that date, William A. accompanied his uncle to the premises of a car wash. When police arrived at the scene, they found that the car wash had been broken into, and they found William in a van nearby. His uncle had apparently fled the scene. When the police questioned William, he explained that he was "junking" with his uncle "as he always did." He also stated that he had been paid to accompany his uncle. At the time of both incidents, William was 13 years old.

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

On October 4, 1984, the State filed two petitions alleging that William A. had committed acts which, if committed by an adult, would be crimes, and that, therefore, William was delinquent. *See* Maryland Code (1974, 1984 Repl. Vol.), § 3–801(k) and (*l*) of the Courts and Judicial Proceedings Article. The petitions alleged that the acts, if they had been committed by an adult, would constitute the crimes of storehouse breaking, felony theft, and malicious destruction of property.

On February 27, 1985, William was found delinquent by a juvenile master. William filed exceptions to the Master's recommended findings and conclusions, and a hearing was held in the Circuit Court for Baltimore City. At the hearing, the defendant argued, *inter alia,* that, because juvenile delinquency adjudications are based upon acts constituting crimes if committed by adults, the infancy defense should be available to children in delinquency proceedings. The defendant argued that children between ages 7 and 14 were entitled to a presumption of incapacity in juvenile delinquency proceedings and that the State in the instant cases had failed to rebut the presumption.

The circuit court overruled the defendant's exceptions, concluding that the infancy defense was inapplicable in juvenile delinquency proceedings. At a later disposition hearing, William was committed to the Juvenile Services Administration.

William appealed to the Court of Special Appeals. In an unreported opinion, the appellate court affirmed the circuit court's judgment. The court held that the infancy defense does not apply in delinquency proceedings, relying on an earlier Court of Special Appeals decision to the same effect, *In re Davis,* 17 Md.App. 98, 299 A.2d 856 (1973). Thereafter, we granted William's petition for a writ of certiorari.

 The common law defense of infancy, or *doli incapax* as it was otherwise known, was explained by the Court of Special Appeals in *Adams v. State,* 8 Md.App. 684, 687–689, 262 A.2d 69, *cert. denied,* 258 Md. 725, *cert. denied,* 400

U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970), as follows (footnotes omitted):

"Since the Code of Hammurabi (*circa* 2250 B.C.) and down through the ages, society, under the law, has viewed and treated offenders of tender years in a light differently and more favorably than that accorded adults accused of breaching the law. Over the centuries and during the evolution of the common law of England, there emerged a rule of law governing 'the responsibility of infants' under which an individual below the age of seven years cannot be found guilty of committing a crime; an individual above fourteen years charged with a crime is to be adjudged as an adult; and between the ages of seven and fourteen there is a rebuttable presumption that such individual is incapable of committing a crime. In the absence of any pertinent legislative enactment in this State, the common law principles, as stated above, would appear to govern in Maryland and we so hold.

"In the case at bar, the appellant was shown to be thirteen years, ten and a half months of age at the time the crime was committed. It was, therefore, incumbent upon the State to produce sufficient evidence to overcome the presumption that the appellant was *doli incapax*, an expression ordinarily employed by the text writers. The proof necessary to meet this burden has been variously phrased: It must be shown that the individual 'had discretion to judge between good and evil;' 'knew right from wrong;' had 'a guilty knowledge of wrong-doing;' was 'competent to know the nature and consequences of his conduct and to appreciate that it was wrong.' Perhaps the most modern definition of the test is simply that the surrounding circumstances must demonstrate, beyond a reasonable doubt, that the individual knew what he was doing and that it was wrong.

"It is generally held that the presumption of *doli incapax* is 'extremely strong at the age of seven and diminishes gradually until it disappears entirely at the age of fourteen * * *.' Since the strength of the pre-

sumption of incapacity decreases with the increase in the years of the accused, the quantum of proof necessary to overcome the presumption would diminish in substantially the same ratio."

*See* L. Hochheimer, *A Manual of Criminal Law as Established in the State of Maryland,* § 16 (1889); I *Bishop on Criminal Law* §§ 368–370, at 260–262 (9th ed. 1923); W. LaFave, A. Scott, *Criminal Law* § 4.11, at 398–403 (2d ed. 1986); R. Perkins, *Criminal Law* 837–840 (2d ed. 1969); Ludwig, *Rationale of Responsibility For Young Offenders,* 29 Neb.L.Rev. 521, 526–529 (1950). *See also, e.g., Godfrey v. State,* 31 Ala. 323 (1858); *State v. Fowler,* 52 Iowa 103, 2 N.W. 983 (1879); *Angelo v. People,* 96 Ill. 209 (1880); *Heilman v. Commonwealth,* 84 Ky. 457, 1 S.W. 731 (1886); *State v. Guild,* 10 N.J.L. 163 (1828); *State v. Pugh,* 7 Jones (52 N.C.) 61 (1859); *State v. Toney,* 15 S.C. 409 (1881); *Juvenile Court of Shelby County v. State,* 139 Tenn. 549, 201 S.W. 771 (1918); *Gardiner v. State,* 33 Tex. 692 (1871); *State v. Learnard,* 41 Vt. 585 (1869); *Law v. Commonwealth,* 75 Va. 885 (1881).

With the advent of juvenile delinquency proceedings in lieu of criminal prosecutions, the issue arose in a number of jurisdictions as to whether, absent express statutory language, the infancy defense remained applicable in the delinquency proceedings. Some courts, like the Court of Special Appeals in *In re Davis, supra,* took the position that the defense was inapplicable. *See, e.g., Jennings v. State,* 384 So.2d 104 (Ala.1980); *Gammons v. Berlat,* 144 Ariz. 148, 696 P.2d 700 (1985); *State v. D.H.,* 340 So.2d 1163 (Fla. 1976); *In Interest of Dow,* 75 Ill.App.3d 1002, 31 Ill.Dec. 39, 393 N.E.2d 1346 (1979); *In the Matter of Skinner,* 272 S.C. 135, 249 S.E.2d 746 (1978). The rationale of these cases is essentially the same, and was expressed by the Court of Special Appeals in *Davis* as follows (17 Md.App. at 104, 299 A.2d at 860):

"Under the [juvenile] statute, by its purpose and the very principles it advances, the child under the jurisdiction of a juvenile court is conclusively presumed *doli incapax.*

The child is delinquent, not because he committed a crime, but because he committed an *act* which would be a crime if committed by a person who is not a child, and because he requires supervision, treatment or rehabilitation. He must be *doli capax* to commit a crime, but not to commit a delinquent act. The *raison d'etre* of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws."

Or, as another writer expressed it (Walkover, *The Infancy Defense in the New Juvenile Court,* 31 UCLA L.Rev. 503, 516–517 (1984)),

"[b]ecause *parens patriae* theory depends on the notion that the child is being helped and thus is not being tried for a crime and punished as a criminal, there was no need to determine whether the child had the capacity to act in a culpable fashion. Indeed, assertion of the defense could be viewed as wrongfully precluding treatment for those very children most susceptible to the benefits of intervention, children who had committed wrongs without a clear sense of the wrongfulness of their acts."

In the instant case the State, essentially reflecting the above view, argues that the mental state of the defendant is irrelevant in a juvenile delinquency adjudicatory proceeding and that, therefore, the infancy defense has no place. The State asserts (brief, p. 4):

"In effect, a juvenile proceeding is an acknowledgment that the person before the court is *doli incapax* and therefore subject to treatment, not punishment. As a result, the question of mental state is irrelevant to the question of whether a 'delinquent act' has been committed. The mental awareness of wrongdoing is relevant only to the question of whether a child needs guidance, treatment, or rehabilitation and, if so, the nature of the remedy."

Other courts, however, have reached the contrary conclusion, holding that the defense of infancy is fully applicable in juvenile delinquency proceedings. *See, e.g., In re R,* 1 Cal.3d 855, 464 P.2d 127, 83 Cal.Rptr. 671 (1970); *Matter of Andrew M,* 91 Misc.2d 813, 398 N.Y.S.2d 824 (1977); *Com. v. Durham,* 255 Pa.Super. 539, 389 A.2d 108 (1978); *State v. Q.D.,* 102 Wash.2d 19, 685 P.2d 557 (1984). *See also* Walkover, *supra,* 31 UCLA L.Rev. at 562.

A principal reason supporting the applicability of the defense is that juvenile statutes typically require, for a delinquency adjudication, that the child commit an act which constitutes a crime if committed by an adult, and if the child lacks capacity to have the requisite mens rea for a particular crime, he has not committed an act amounting to a crime. Another reason often given is that the pertinent statutes do not expressly render inapplicable the infancy defense, and that, to presume a repeal by implication, would largely eradicate the defense. These considerations were set forth by Justice Tobriner for the Supreme Court of California as follows (*In re R., supra,* 464 P.2d at 132–134):

"As we have stated, section 602 provides that any minor who violates 'any law of this State,' that defines crime, comes under the jurisdiction of the juvenile court. We shall point out that in order to become a ward of the court under that section, clear proof must show that a child under the age of 14 years at the time of committing the act appreciated its wrongfulness. This conclusion follows from the statutory postulate that the jurisdiction of the court must rest upon a violation of a law that defines crime and from the further statutory requirement of Penal Code section 26, subdivision One, that, by definition, a child under the age of 14 years does not commit a crime in the absence of clear proof that he 'knew its wrongfulness.'

"A ruling that a child could be committed to the juvenile court under section 602, in the absence of such clear proof, would compel the disregard of section 26 or the assumption of its repeal. Indeed, the Welfare and Insti-

tutions Code provides that the juvenile courts exercise exclusive jurisdiction over all minors under the age of 16; these children cannot otherwise be tried as criminal offenders. (See Welf. & Inst.Code, § 707; 40 Ops.Cal.Atty. Gen. 83 (1962).) Hence, if section 26 pertains at all to a definition of criminal conduct it must apply to proceedings under section 602 which, in turn, covers '[a]ny person under the age of 21 years who violates any law of this State * * *.'

"We cannot presume the repeal of section 26 by implication; the decisions clearly establish the contrary presumption.

 * * * * * *

"Section 26 accords with the historical treatment of juveniles, deriving from the early common law that children under the age of seven could not be held responsible for criminal conduct. (See *In re Gault* (1967) 387 U.S. 1, 16, 87 S.Ct. 1428 [1437–38] 18 L.Ed.2d 527.) Between the ages of seven and fourteen the common law rebuttably presumed children incapable of criminal acts, unless the particular child possessed the requisite age and experience to understand the wrongfulness of his act. (R. Perkins, Criminal Law (2d ed. 1969) p. 837.) California likewise rebuttably presumes all minors under the age of 14 incapable of committing a crime, but does not totally exclude any child from criminal responsibility. Section 26 embodies a venerable truth, which is no less true for its extreme age, that a young child cannot be held to the same standard of criminal responsibility as his more experienced elders. A juvenile court must therefore consider a child's age, experience, and understanding in determining whether he would be capable of committing conduct proscribed by section 602."

An additional reason given by the cases upholding the applicability of the infancy defense in juvenile delinquency proceedings, relates to the evolving nature of those proceedings. As explained by the Supreme Court of Washington in *State v. Q.D., supra,* 102 Wash.2d at 23, 685 P.2d at 560:

"The juvenile justice system in recent years has evolved from parens patriae scheme to one more akin to adult criminal proceedings. The United States Supreme Court has been critical of the parens patriae scheme as failing to provide safeguards due an adult criminal defendant, while subjecting the juvenile defendant to similar stigma, and possible loss of liberty. *See In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966); and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1977).... Being a criminal defense, [the infancy defense] should be available to juvenile proceedings that are criminal in nature."

One commentator, in urging that the infancy defense remain applicable in juvenile delinquency proceedings, has stated (Walkover, *supra*, 31 UCLA L.Rev. at 562):

"Careful review of the recent history of the juvenile court reveals that the juvenile justice system has turned from rehabilitation to principles of accountability in dealing with youthful offenders. In light of this, continued reliance on the rehabilitative ideal to undercut key protections against sanctioning the innocent in the justice process, such as the infancy defense, is intellectually and institutionally problematic....

"Non-culpable children faced with the criminal process must be protected, not by the state, but from the state. There is nothing unique in the juvenile process, including the concept of lesser culpability, that excludes it from this conclusion. This, in sum, is the received wisdom of the last twenty-five years of juvenile sociological and jurisprudential study."

We agree with those courts which have held that the infancy defense applies in juvenile delinquency adjudicatory hearings. The defense is a firmly established principle of our common law; the General Assembly is undoubtedly cognizant of it, but the Legislature has neither repealed it,

nor modified it, nor stated that it is inapplicable to juvenile delinquency proceedings. Repeals by implication are, of course, disfavored.

 As previously discussed, Maryland law defines a "delinquent act" as "an act which would be a crime if committed by an adult." § 3–801(k) of the Courts and Judicial Proceedings Article. Most crimes require some mens rea characteristics; they are elements of the crimes. If, when one commits an act, the requisite mens rea for a crime does not exist, the act does not constitute a crime. *See generally, e.g., Hoey v. State,* 311 Md. 473, 490–495, 536 A.2d 622 (1988); *Shell v. State,* 307 Md. 46, 59–65, 512 A.2d 358 (1986). The defense of infancy relates to the presence or absence of the mens rea required for an act to constitute a crime. *See Adams v. State, supra,* 8 Md.App. at 688, 262 A.2d at 72. Consequently, the infancy defense relates to whether the act committed by a juvenile "would be a crime if committed by an adult," as prescribed in § 3–801(k) of the juvenile causes subtitle of the Courts and Judicial Proceedings Article. To hold otherwise would be judicially creating an exception to the legislative definition.

We cannot accept the State's position that, under the juvenile causes subtitle, "mental state is irrelevant to the question of whether a 'delinquent act' has been committed." (Brief, p. 4). Such a holding would render a great deal of nonculpable conduct subject to delinquency proceedings.

 The State points out that rejection of its position will mean that delinquency proceedings can never be brought against children six years old and younger, because their presumption of incapacity is irrebuttable. This may be. Nevertheless, we have no indication that the General Assembly intended that *delinquency* petitions be brought against children between one day and six years old. We point out, however, that our holding is limited to *delinquen-*

*cy* actions. With respect to a child under seven years of age, the state may file a child in need of supervision petition (CINS), *see* § 3–801(f) of the Courts and Judicial Proceedings Article,[1] or a child in need of assistance petition (CINA), *see* § 3–801(e).[2] As these proceedings are not necessarily based on the commission of acts constituting crimes, the infancy defense obviously has no relevance to them. This option was also noted by the California Supreme Court in *In re R.*, *supra*, 464 P.2d at 135–136.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS.

---

1. Section 3–801(f) provides:
 "(f) *Child in need of supervision.*—'Child in need of supervision' is a child who requires guidance, treatment, or rehabilitation and
 (1) He is required by law to attend school and is habitually truant; or
 (2) He is habitually disobedient, ungovernable, and beyond the control of the person having custody of him; or
 (3) He deports himself so as to injure or endanger himself or others; or
 (4) He has committed an offense applicable only to children."

2. Section 3–801(e) provides:
 "(e) *Child in need of assistance.*—'Child in need of assistance' is a child who requires the assistance of the court because
 (1) He is mentally handicapped or is not receiving ordinary and proper care and attention, and
 (2) His parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his problems provided, however, a child shall not be deemed to be in need of assistance for the sole reason he is being furnished nonmedical remedial care and treatment recognized by State law."