THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* RALPH FIELDS, Defendant.

County Court, Kings County, May 28, 1940.

*William O'Dwyer, District Attorney [Harry Davey of counsel],* for the plaintiff.

*Thomas C. Bress,* for the defendant.

FITZGERALD, J. The defendant on July 6, 1939, was convicted in this court, upon his own confession and plea of guilty, of the crime and felony of robbery in the second degree, unarmed.

An information has been filed charging the defendant with being a fourth offender, in that he had on three prior occasions been convicted in the State of Pennsylvania of crimes which, if committed in this State, would be felonies.

Upon arraignment, upon the information, the defendant admitted his identity, but asserted that at the time of the first conviction he was under the age of sixteen years, and, therefore, the crime of which he was convicted, if committed in this State, would not have been a felony, or any crime, but a juvenile delinquency. (Penal Law, § 2186.)

The charge upon which defendant was convicted, and which is challenged, is set forth in the information in the following language: " The said defendant, on or about the 26th day of September, 1929, in the Court of Oyer and Terminer and General Jail Delivery, in and for the County of Philadelphia * * * was duly by law convicted upon his own confession and plea of guilty to the crime of Voluntary Manslaughter, under a certain indictment then and there pending against him in the said court in which indictment it is alleged that the said Ralph Fields * * * on the 18th day of August, in the year of Our Lord one thousand nine hundred and twenty-nine, * * * within the jurisdiction of this Court, with force and arms, etc., in and upon the body of one Charles Ferranti, feloniously, wilfully, and of malice aforethought, did make an assault, and the said Charles Ferrante then and there, feloniously, wilfully and of his malice aforethought, did kill and murder, whereupon the said defendant was sentenced to confinement in the Glen Mills School for Boys."

The pertinent part of section 2186 of the Penal Law reads as follows: " A child of more than seven and less than sixteen years of age, who shall commit any act or omission which, if committed by an adult, would be a crime not punishable by death or life imprisonment, shall not be deemed guilty of any crime, but of juvenile delinquency only."

It appears on the face of the indictment (supra) that at the time of the conviction of defendant of voluntary manslaughter he was a minor. His age does not appear. The only available evidence of his age is contained in a letter from a visiting agent to the Glen Mills School, addressed to the district attorney, in which it is said: " Ralph Emerson Fields was born in Dale County, Alabama, September 14, 1915; the son of Richard Fields, born in Dale County, Alabama, and Mary Fields, nee Williams, born in Pike County, Alabama. Both parents were living at the time of the boy's commitment," which was September 26, 1929.

There is no presumption as to age; the question being raised, it is incumbent upon the People to establish it. The district attorney concedes that no evidence is available.

At common law there was a conclusive presumption of incapacity on the part of persons under seven years of age to commit certain

crimes. That presumption has now been extended to children between the ages of seven and sixteen years.

In *People* v. *Roper* (259 N. Y. 170, 171) it is said that section 2186 of the Penal Law " decrees that the acts of a child shall, in all cases other than acts constituting a felony punishable by death or life imprisonment, be treated as if done without the ' evil mind ' which characterizes felonious intent."

" The result is that the only crimes which a child under sixteen years of age is capable of committing are treason, murder in the first degree and murder in the second degree." (*People* v. *Murch,* 263 N. Y. 285, 290.)

Since that decision section 1250 of the Penal Law has been amended to include kidnapping under certain circumstances among the crimes punishable by death. (Laws of 1933, chap. 773.)

To reach a correct decision herein, it is necessary to decide whether voluntary manslaughter, under the Pennsylvania statutes, is such a crime as would be punishable by death or life imprisonment if committed within this State.

Mere characterization of the offense by the laws of a foreign jurisdiction is not conclusive as to the nature of the crime. (*People* v. *Stovali,* 172 Misc. 469, 471.)

The indictment under which the conviction was had having charged murder in the first degree, the facts alleged therein do not control the character of the offense.

It is necessary to examine the statutes of Pennsylvania to ascertain what acts constitute the crime of voluntary manslaughter.

Unfortunately the various degrees of homicide are not defined in the Pennsylvania statutes with such preciseness as to render a decision as to what constitutes voluntary manslaughter easy.

Murder is defined in those statutes as follows:

" § 7974. Murder. All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary or kidnapping, shall be deemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain on their verdict whether it be murder of the first or second degree; but if such person shall be convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly." (1923, May 22; P. L. 306, § 1; Penn. Stat. Anno. tit. 18, § 2221.)

There is no statutory definition of voluntary manslaughter. Sections 7965 and 7976 provide the penalties for murder in the first and second degrees. Section 7977 is as follows:

" § 7977. Voluntary Manslaughter. Every person convicted of any voluntary manslaughter shall be sentenced to pay a fine not exceeding one thousand dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, or simple imprisonment, not exceeding twelve years, and in the discretion of the court, to give security for good behavior during life, or for any less time, according to the nature and enormity of the offense." (1860, March 31; P. L. 382, § 78; Penn. Stat. Anno. tit. 18, § 2225.)

There is also the crime of involuntary manslaughter, but there is no statutory definition of that offense. To ascertain the elements that constitute voluntary manslaughter, resort must be had to the decisions of the courts.

In *Commonwealth* v. *Colandro* (231 Penn. St. 343; 80 A. 571) it is said: " ' Voluntary manslaughter is a homicide intentionally committed under the influence of passion.' * * * ' The term " passion " as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected.' "

In *Commonwealth* v. *Flax* (331 Penn. St. 145; 200 A. 632) it is said: " The crime of voluntary manslaughter consists of an intentional and unlawful killing of a human being without malice, either express or implied, but committed under the immediate influence of sudden passion."

In *Commonwealth* v. *Yeager* (329 Penn. St. 81; 196 A. 827) it is said: " The crime of voluntary manslaughter consists of an intentional and unlawful killing of a human being without malice, either express or implied, but committed under the immediate influence of sudden passion. The sudden passion which will reduce an unlawful killing to voluntary manslaughter must be due to legally adequate provocation. The law views with some tolerance an unlawful act impelled by a *justifiably passionate* heart but has no toleration whatever for an unlawful act impelled by a *malicious* heart."

Voluntary acts have been the object of exhaustive investigation, study and analysis. All schools of psychology are practically in agreement that voluntary action is the result of a choice between possible lines of conduct — a free decision to act one way or another.

Thus in " Psychology," by Rev. Michael Maher, S. J. (Longmans, Green & Co. [4th ed.], p. 216), is the following under the heading " Voluntary Action:" " Thus the child finds himself able to inhibit

particular impulses. The power of reflexion awakens within him, and he becomes aware that he can choose or *decide* which of the impulsive tendencies he will *approve,* and which of the competing desires within him he will adopt and identify with himself. When this state is reached, we have *voluntary action* in the true sense."

Lotze states that " An action is ' voluntary ' in case the interior initial state (impulse) from which an emotion would originate as a result does not merely *take place* but is *approbated* or adopted, or *endorsed* by the will." (Outlines of Psychology, p. 87.)

The term " voluntary," says Professor Ladd, fitly lays the emphasis upon the conscious act of choice. (Elements of Physiological Psychology, p. 528.)

So it seems that to scientific psychologists voluntary action is free, and the result of decision. It necessarily follows that it is intentional.

With this in mind an analysis of the Pennsylvania case, heretofore discussed, justifies the conclusion that malice is the fact which differentiates murder from voluntary manslaughter. In that respect the Pennsylvania law differs from ours. Under our statutes an essential characterization of murder in either degree is the intent — " a design to effect the death of the person killed, or of another." (Penal Law, §§ 1042, 1046.) If the killing be with deliberation and premeditation; that is with malice, under our statutes it is first degree murder; if without deliberation and premeditation, *i. e.,* malice, it is murder in the second degree.

It appears that voluntary manslaughter under the Pennsylvania statutes (see authorities, *supra*) is an intentional killing. Such a homicide under our statutes is murder in some degree. The penalty for murder in the second degree is " imprisonment under an indeterminate sentence, the minimum of which shall be not less than twenty years and the maximum of which shall be for the offender's natural life." (Penal Law, § 1048.)

It is the opinion of the court that the crime of voluntary manslaughter under the Pennsylvania statutes, if committed within this State would be murder in the second degree. If so it is equivalent to a prior felony conviction of defendant. As two other prior felony convictions of defendant have been established, it follows that defendant's conviction herein of robbery in the second degree, unarmed, constitutes a fourth felony conviction of defendant.