Stanley Gartenstein, J.
There comes a point at the extreme end of the spectrum to which a principle is intended to *814 have reference where its relevance may seriously be que^ tioned. We reach this point in the proceeding before us.
Andrew M. is before the court as a respondent in a proceeding to adjudicate him a delinquent. He is charged with committing acts which if committed by an adult would constitute the crimes of burglary in the third degree (Penal Law, § 140.20) and criminal possession of stolen property in the third degree (Penal Law, § 165.40). He is eight years old. Standing at full height, the top of Andrew’s head barely clears the counsel table in the courtroom.
One look at this respondent is sufficient to prompt the conclusion that the juvenile justice system clearly was not designed for his level of maturity and development. Despite the fact that he meets the technical definition of the jurisdictional statute as being "a person over seven and less than sixteen years of age” (Family Ct Act, § 712) the court has serious doubts that he is capable of understanding concepts of criminal liability or any facets of the judicial process in which he finds himself. The Law Guardian has in fact interposed the common-law defense of incapacity because of infancy, viz., immaturity, and the sufficiency of this defense is now before the court.
The impact of this argument resolves itself as a matter of law into the question of first impression; does the legislative conclusive presumption of incapacity to commit a crime between the ages of 7 and 16 (Family Ct Act, § 712) obliterate the common-law rebuttable presumption of incapacity because of lack of maturity in effect prior to the enactment of section 712 of the Family Court Act and its predecessor statutes?
THE CONCEPT OF MENS REA AS APPLIED TO JUVENILES
The crucial determinant of criminal behavior in the classic common-law sense was the so-called "evil intent” or mens rea without which an act could not be deemed criminal in nature.[1] Mens rea has been defined in terms of knowledge of the antisocial consequences of one’s acts. In a perceptive analysis in the Cambridge Law Journal, Sanford H. Kadish points out the existence of two separate categories of mens rea. First, there is mens rea in its special sense in which it "refers only *815 to the mental state which is required by the definition of the offense to accompany the act which produces or threatens the harm”. (Kadish, Decline of Innocence, Cambridge LJ, 1968, p 274.) Without this intent, there can be no criminal liability for any act in question.
The second category of mens rea addresses the question of legal responsibility for one’s acts and classically includes the defenses of infancy and insanity (Kadish, supra p 275), requiring a legal determination of the capacity of the perpetrator to understand the nature and wrongfulness of his act. In addressing itself to these considerations with regard to the defense of infancy, common-law courts were aided by two presumptions: First, that a child under seven was conclusively presumed incapable of committing a crime; second, that a child between the ages of 7 and 14 was rebuttably presumed to lack this criminal capacity. (Richardson, Evidence [10th ed], § 57.) While authority exists for the proposition that the enactment of the Family Court Act extended the conclusive presumption to the latter category and the exempt age to 16 (cf. People v Fields, 174 Misc 309), thus ostensibly obliterating the rebuttable common-law presumption, (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 30.00), this authority viewed the juvenile proceeding as civil in nature, a notion still held but considerably diluted by admonitions in Matter of Gault (387 US 1) to the effect that most safeguards available in criminal proceedings also be available to juveniles irrespective of the semantics of labeling.
If we view juvenile proceedings as the Supreme Court does in Gault (supra), and Matter of Winship (397 US 358) as being a special category of "almost criminal” liability, the fiction of a conclusive presumption of incapacity to commit a crime becomes a historical vestige with roots in pre-Gault philosophy which falls in the face of the reality of minimum periods of secure incarceration newly enacted in the Juvenile Justice Reform Act of 1976 (L 1976, ch 878). With this reality in mind, the rebuttable presumption of incapacity, ostensibly swallowed within the conclusive presumption enacted by the Family Court Act, takes on new relevance. For, if the presumption which purports to absorb is illusory, how can it destroy by sheer inference the substantive defense of infancy available via the common-law rebuttable presumption? That this defense is not obliterated once a hint of criminal liability exists is recognized in other jurisdictions (see Matter of Gladys *816 R., 1 Cal 3d 855; Matter of Davis, 17 Md App 98; 34 Maryland L Rev 178; K. P. v State, 327 So 2d 820 [Fla]; R. D. C. v State, 332 So 2d 134 [Fla]).
Inclined as we are from the foregoing to rule in favor of the continued existence of the common-law rebuttable presumption of lack of capacity owing to infancy, it would be appropriate to consider its ramifications in this State as a matter of policy. The Institute for Judicial Administration/American Bar Association (IJA/ABA) Juvenile Justice Standards Project has considered the age of 10 as the threshold of responsibility (Tentative draft [1976] — Juvenile Justice Task Force, vol IV, p 7, citing IJA/ABA Juvenile Justice Standard, § 2.1). New York is now one of two States with a minimum age of 7. Four States enact a minimum age of 10. All others do not specify minimum ages. (Tentative draft, supra, p 5). If we hold as inclined that this defense based upon immaturity is available, the practical result thereof will be to aflect the fewer than 1% of juveniles before the court who are under 9 and the 2% who are 10 or under (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 714), a figure conforming statistically to the 1973 statistic compiled by the Law Enforcement Assistance Administration (Source-book of Criminal Justice Statistics, 1975, p 268), showing a national figure for children under 10 of 1.2% of total arrests for violent crimes and .6% of all arrests. Nor can we overlook the superb functioning of the California statute which gives the arraigning Judge the obligation in the very first instance of determining whether the child should be dealt with as an alleged delinquent or person in . need of supervision or other category, even including dismissal without further hearing if it is determined that jurisdiction is unnecessary or inappropriate (see Matter of Gladys R., supra).
In the final analysis we are constrained to point out that the availability of a logical defense consistent with due process and morality will not further overburden a system now being criticized for its unworkability. The unworkability of this system, if it exists at all, cannot be placed at the doorstep of the court whose function of hearing and determining it performs, but rather in the unwillingness of the executive and legislative branches of government to provide adequate facilities; to compel persons and institutions charged by law with the responsibility of performance to do just that; and to discipline recalcitrant or inept personnel for their failure to give the taxpayers dollar-for-dollar value for funds expended.
*817 We therefore hold that the common-law defense of lack of capacity owing to immaturity shall be available as a defense to respondent if proven factually and that this matter shall proceed accordingly.
The court would be less than candid if it did not acknowledge its indebtedness to the perceptive arguments and solid research of the Law Guardian so obviously reflected in the brief submitted on this motion.
Recalendar for trial upon notice to parties and counsel.

. We exclude crimes falling within a legislated class of mallum prohibitum acts requiring no intent which are not "evil by themselves” (mallum in se) to which we have no reference herein.