625 So.2d 1187 (1993)
M.S.
v.
STATE.
CR-92-869.
Court of Criminal Appeals of Alabama.
July 23, 1993.
James W. May, Foley, for appellant.
James H. Evans, Atty. Gen., and Shirley Brown, Asst. Atty. Gen., for appellee.
TAYLOR, Judge.
The appellant, M.S., a nine-year-old, was adjudicated delinquent on the underlying offense of reckless endangerment, a violation of § 13A-6-24, Code of Alabama 1975. He was sentenced to 12 months' unsupervised probation and the judge ordered that the appellant be accompanied by his father when using his BB gun.

I
The appellant initially contends that he did not have the maturity and judgment necessary to be found guilty of reckless endangerment. He argues that children between the ages of 7 and 14 are presumed to be incapable of forming the necessary intent to commit crimes. The state disagrees and contends that Jennings v. State, 384 So.2d 104 (Ala.1980), holds that the state no longer has to show in a delinquency action that the *1188 child had the capacity to understand the wrongfulness of his conduct. Justice Shores in Jennings stated:
"Appellant contends that because a delinquent act is defined by Code 1975, § 12-15-1, as an `act designated a crime under the law of this state,' the state must prove all the elements of a crime, including capacity to form the intent to commit a crime, and that the Juvenile Code thus leaves intact the common-law presumption of incapacity. However, we believe that the protections afforded a juvenile under Code 1975, § 12-15-1, et seq., render unnecessary the limited protection available at common law to children charged with criminal acts. As stated by the Florida Court of Appeals, which examined the identical issue in connection with their own Juvenile Code:
"`The common law presumption of incapacity... was available as a defense to children charged with crimes and susceptible to receiving punishment as if they were adults. The intent of the presumption was to afford juveniles some limited protection against the ordinary criminal process. Given the extensive protections afforded juveniles in Florida's Juvenile Court Act, the defense of incapacity would appear to be unnecessary. Moreover, the survival of the incapacity defense could act to defeat the juvenile statute's effectiveness by preventing the reformation of children who successfully argue the defense.'

"K.P. v. State of Florida, 327 So.2d 820 (Fla.Dist.Ct.App.1976). See also `Juvenile ProceedingsCommon Law Presumption of Criminal Incapacity of Minors Under Age Fourteen Inapplicable to Juvenile Delinquency ProceedingsIn re Davis,' 34 Maryland L.Rev. 178 (1974).
"As does the Florida statute, our juvenile statute removes juveniles who have committed a crime from the jurisdiction of the criminal justice system, and establishes an entirely separate system to minister to them, a system whose aim is rehabilitative rather than retributive. In recognition, however, that rehabilitative measures sometimes involve a partial or total deprivation of liberty, a juvenile who is charged with delinquent acts or is alleged to be in need of supervision is extended many of the due process protections guaranteed defendants in a criminal trial, thereby receiving the benefit of both systems. In particular, Code 1975, §§ 12-15-66 and 12-15-67, guarantee juveniles the privilege against self-incrimination, exclude evidence illegally obtained and extrajudicial statements which are constitutionally inadmissible, and prohibit multiple criminal or juvenile proceedings based on the same offense. Applying the common-law presumption of incapacity, which was designed to protect juveniles from the rigors of trial as an adult, to juvenile proceedings would increase the protection provided juveniles only insofar as it would operate to remove some juveniles from the operation of either system. Far from benefiting the juvenile so affected, it would prevent the child from receiving urgently needed therapy and supervision, and perhaps endanger those around him or her.
"....

"In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the landmark United States Supreme Court case which extended many of the constitutionally required procedural safeguards available to adult criminal defendants to juveniles subject to delinquency proceedings. As explained by the New York court [in Matter of Andrew M., 398 N.Y.S.2d 824, 91 Misc.2d 813 (1977) ]:
"`If we view juvenile proceedings as the Supreme Court does in Gault (supra), and Matter of Winship [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368] [citation omitted], as being a special category of "almost criminal" liability, the fiction of a conclusive presumption of incapacity to commit a crime becomes a historical vestige with roots in pre-Gault philosophy which falls in the face of the reality of minimum periods of secure incarceration newly enacted in the Juvenile Justice Reform Act of 1976 [citation omitted]. With this reality in mind, the rebuttable presumption of incapacity, ostensibly swallowed within the conclusive presumption *1189 enacted by the Family Court Act, takes on new relevance. For, if the presumption which purports to absorb is illusory, how can it destroy by sheer inference the substantive defense of infancy available via the Common Law rebuttable presumption?'
"398 N.Y.S.2d at 826.
"However, while Gault required procedural safeguards to be applied to juvenile proceedings, it did not attempt to define the jurisdiction of state juvenile court, or to define the offenses which would bring juveniles under that jurisdiction. That remains the prerogative of state legislatures. Our legislature has, as explained above, removed capacity to understand the wrongfulness of one's conduct from the elements which the state is required to prove in adjudicating a juvenile delinquent. This it may do without transgressing constitutional barriers. Capacity, or lack of it, may, of course, be taken into account during the dispositional hearing."
Jennings, 384 So.2d at 105-06. (Emphasis added.) Jennings was this state's first opportunity to confront the issue whether in a delinquency action the state had to prove that the child involved understood the nature of his actions. This issue has not again been addressed by the appellate courts in this state. However, we find further support for the Alabama Supreme Court's decision in the following quote:
"[T]he juvenile is conclusively presumed doli incapax, and it has thus been held that the common-law presumption of criminal incapacity of a child between certain specified ages does not apply to delinquency proceedings."[1]
43 C.J.S. Infants § 58 (1978). The appellant's contention that he was incapable of forming the requisite intent to commit a criminal offense is inapplicable in a delinquency proceeding in Alabama.

II
The appellant also contends that there was no evidence presented to establish the element of "serious physical injury," as is required by the reckless endangerment statute. § 13A-6-24, Code of Alabama 1975. This section states, in pertinent part:
"A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."
(Emphasis added.)
Serious physical injury is defined in § 13A-1-2(9) as:
"Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
The appellant argues that there was no evidence that the conduct with which he is charged resulted in a "substantial risk of death" or "protracted impairment of health." Reckless endangerment "is applicable to reckless conduct which creates a substantial risk of, but does not result in, serious physical injury." Commentary to § 13A-6-24, Code of Alabama 1975.
There was sufficient evidence presented that the element of reckless endangerment was satisfied. June Nelson, who filed the complaint against the appellant, stated that she was in her yard in Gulf Shores, Alabama, on November 7, 1992, when the appellant shot his BB gun at her, her daughter, and her granddaughter. Nelson testified that the appellant was shooting the gun directly at them and that he was aiming the BB gun at them. She said that she saw BB pellets in the ground beside them, and that she could hear the pellets hitting objects around them. Some of the pellets landed as close as 6 inches from their feet. Nelson also stated that her car, which she was standing directly next to at the time of the incident, was damaged by pellets from the BB gun. The windshield of the car was "pitted" after the incident. The appellant's father testified, and, of course, it is common knowledge, that being hit with a BB gun pellet can cause injury to the eye. The appellant's father also *1190 testified that he had taught his son, the appellant, about gun safety. There was evidence presented from which the court could find that the appellant's actions created a "substantial risk of serious physical injury to another person." The appellant was correctly determined to be delinquent on the underlying offense of reckless endangerment.
For the foregoing reasons, the court's finding of delinquency is affirmed.
AFFIRMED.
All the Judges concur.
NOTES
[1] "doli incapax" is defined in Black's Law Dictionary 483 (6th ed. 1990) as being "incapable of criminal intention or malice; not of the age of discretion."