## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### July 25, 1923.

## THE PEOPLE v. JOSEPH B. STETZ.

### (206 App. Div. 223.)

(1) ROBBERY—DEFENSE THAT ROBBERY WAS A PRACTICAL JOKE—INTENT— EVIDENCE—ERROR TO PERMIT DEFENDANT TO BE CROSS-EXAMINED TO SHOW THAT CODEFENDANT FLED SEVERAL DAYS AFTER ALLEGED CRIME AND THAT DEFENDANT DID NOT HAVE CODEFENDANT AS WITNESS—ACTS OF CODEFEND- ANT AFTER COMMISSION OF CRIME NOT ADMISSIBLE.

On a prosecution for robbery in the first degree the defendant, who was jointly indicted with another, introduced considerable evidence to prove his defense that the robbery was a practical joke and the case was a very close one on the question of defendant's intent.

Held, that it was error for the court to permit the defendant to be cross-examined for the purpose of showing that the codefendant fled from his residence several days after the alleged crime, since any action on the part of an accomplice done after the commission of the crime is not admissible in evidence against the defendant, and the district attorney did not have any right to comment on the flight of the code- fendant or on his failure to appear as a witness in behalf of the defendant.

(2) SAME—NOT NECESSARY TO OBJECT TO QUESTION ASKED BY COURT.

It was not necessary for defendant's attorney to object to questions asked of the defendant by the court on cross-examination in order that the defendant might raise the objection on appeal.

(3) SAME—NEW TRIAL GRANTED FOR ERRORS, AND UNDER CODE CRIM. PROC., § 542.

A new trial is granted for errors in the admission of evidence and for the improper comments made by the district attorney as to the flight of the codefendant and also under the powers conferred upon the Appellate Division by section 542 of the Code of Criminal Procedure.

APPEAL by the defendant, Joseph B. Stetz, from a judgment of the Supreme Court, rendered against him on the 2d day of June, 1922, convicting him of the crime of robbery in the first degree, after a trial at the Rockland Trial Term.

*Thomas Gagan,* for the appellant.

*Morton Lexow, District Attorney,* for the respondent.

JAYCOX, J.:

This is a very peculiar and interesting case. The facts are practically undisputed. The question that the jury was called upon to determine was the inference to be drawn from the facts.

The defendant was accused of having robbed one Frank Tierney of certain personal property. That the acts constituting the alleged robbery were performed by the defendant is undisputed. He admits that on the night in question, the 2d day of March, 1922, he did take from the said Tierney his watch and some other personal property; that at the time of said taking he was accompanied by another person, aiding him in the enterprise. He also admits that at the time he had a revolver, but denies that it was loaded. The jury was entitled to come to the conclusion that Tierney was deprived of his property by fear of violence and that the defendant was aided by an accomplice actually present. The only element of the crime in doubt is as to whether the defendant was animated by a criminal intent. He says that he had no such intent; that the whole affair was a farce, a joke, perpetrated for the purpose of having " fun " with Tierney, and in this he is supported by the testimony of a number of witnesses.

The defendant was a chauffeur and resided at Haverstraw. Tierney was also a resident of that place and he and the defendant had been acquainted for a long time. On the night in question Tierney was driving in an automobile from Weehawken, N. J., to Haverstraw. He was accompanied by a young woman named Alma Dey. The party stopped at Nyack for some food and coffee at a quick lunch place. From there Tierney telephoned to Harry Hughes, the keeper of a saloon at Haverstraw. This was at about twelve-forty-five in the morning. Tierney talked to Harry Hughes and his brother,

Arthur Hughes, and asked that a girl named Adele Schultz remain at the saloon and that the saloon be kept open until their arrival, saying that they would arrive in about an hour. The defendant with a number of others was in the saloon at the time and claims that it was then proposed that a joke be perpetrated upon Tierney and that for that purposoe they go down the road over which Tierney was to come and pretend to hold him up as a joke, and that all or practically all of the people in the saloon at this time were informed of the undertaking and its purpose.

The question as to whether the defendant intended to commit a crime or only intended to perpetrate this rough joke was closely contested, and a finding by the jury that it was a joke and that the defendant did not intend to commit a crime would not have been against the weight of the evidence. Under these circumstances it was necessary that every right of the defendant be carefully guarded and that no erroneous testimony which in any way jeopardized his rights be admitted. The defendant was jointly indicted with a man named Wales, who accompanied him upon this enterprise—whatever its character may have been. The defendant was separately tried, Wales apparently not having been apprehended. The defendant was called as a witness in his own behalf and was cross-examined as to what Wales said at the time the alleged robbery was being consummated. The court interrupted the examination and asked the following questions: "By the Court: Q. Where did Wales live at that time? A. At West Haverstraw, I believe. Q. Was he a single or a married man? A. Married. Q. Had he lived in Haverstraw long? A. No, he didn't live in Haverstraw, lived in West Haverstraw. Q. Well, West Haverstraw? Had he lived there several years? A. All his life, I believe. Q. When did you see him last? A. Wales? Q. You have been out of jail now, how long, a couple of weeks? A. I believe it is about three weeks. Q. During the last three weeks have you seen Wales? A. No, I have not.

Q. Do you know where he is now? A. No, I do not. Q. How long is it since you have seen him? A. Three or four nights before I came over here. Q. Before you were arrested? A. Before I was arrested. Q. You haven't seen him since? A. Haven't seen him since. Q. You have been around Haverstraw during the last three or four weeks? A. I have. By Mr. Lexow [the District Attorney]: Q. Is his family still there in Haverstraw? Mr. Gagan: I object to that as incompetent, irrelevant and immaterial. The Court: Overruled. Mr. Gagan: Exception. The Witness: I don't know."

Later the district attorney returned to the subject and asked this question: "Q. Well, have you tried to get Wales to come here to court to be a witness for you? A. Well I have inquired for him to see where he is but I can't seem to find no address at all. Mr. Gagan: I object to that question. The Court: Objection overruled. Mr. Gagan: Exception. By the Court: Q. You haven't gotten him here as a witness? Mr. Gagan: I object to that. The Court: Objection overruled. Mr. Gagan: Exception. The Witness: No, I have not."

I think that the admission of this testimony was error. During the execution of the joint enterprise all that the accomplice or co-conspirator did or said in the furtherance of that joint enterprise would be competent against the defendant; but when the deed is done and the criminal enterprise ended, the criminating conduct or declarations of one accomplice then occurring or made are in no sense evidence against the other. To be admissible they must form a part of the res gestae. This proposition I do not understand to be controverted by the learned district attorney. However, it seems to me that he misconceives the vice of this testimony. He says that it has been held that the prosecuting attorney may refer to or comment upon the failure of a codefendant to testify as a witness. (16 C. J. 906.) It may be that upon the trial of an action, if the codefendant is present and the defendant upon trial fails to call him as a witness, that fact may be commented upon,

but that was not the situation here and that was not the purpose and effect of this testimony. The purpose and effect of the testimony here was to offer in evidence against this defendant the consciousness of guilt evidenced by Wales' apparent flight and permit the jury to infer therefrom that this defendant upon trial was also guilty. For this purpose the testimony was incompetent. In Rowland v. State (45 Ark. 132, 135), it was said: "As to the flight of Armstrong, if he had been upon trial, that fact would have been a circumstance to be weighed by the jury as tending to prove a consciousness of guilt on his part. (Burris v. State, 38 Ark. 221.) But we are unable to perceive how the flight of an accomplice, days after the commission of the offense, can be said to tend in any degree to prove the guilt of the accused. In People v. Stanley, 47 Cal. 113, the admission of evidence of the flight of an accomplice was held to be error, and the case reversed for that reason only. See too, State v. Rand, 33 N. H. 216.

In People v. McQuade (110 N. Y. 284), the defendant was on trial for bribery and the People were permitted to prove that Keenan, Dempsey, DeLacy and Maloney, persons also implicated in the bribery, were at the time of the trial and for some time previous thereto had been absent from the jurisdiction of the court, and residing in Canada. Of this the Court of Appeals said: "The admission of this evidence was in contravention of the settled rule that only the acts and declarations of a co-conspirator, done in furtherance and execution of the common design, are admissible against one of the conspirators on trial for the common offense, and that when the conspiracy is at an end, and the purposes of the conspiracy have been fully accomplished, or the conspiracy has been abandoned, no subsequent act or declaration of one of the conspirators is admissible against another. [1 Greenl. Ev. § 111; 3 id. § 94; People v. Davis, 56 N. Y. 103; New York Guaranty & Ind. Co. v. Gleason, 78 id. 503.]" (See also, Brown v. United States, 150 U. S. 93, 98, 99.)

It is true that some portion of the testimony was elicited without objection but the questions were asked by the court. This was tantamount to a ruling by the court that the testimony was competent, and under the circumstances it can hardly be held that the defendant waived his rights by failure to object thereto. Further, this court, under section 542 of the Code of Criminal Procedure, must give judgment without regard to technical errors or defects. Therefore, when incompetent testimony has been introduced, although not objected to, if we are of the opinion that thereby the defendant has been deprived of a fair trial, it is our duty to reverse notwithstanding the defendant failed to take proper exception thereto.

In this case, as I have stated, the question as to the intent with which the defendant acted was exceedingly close. Under these circumstances it is the duty of this court to examine the record with extreme care, and the admission of any erroneous testimony must be held to have affected the substantial rights of the party and requires a new trial. That the testimony above quoted was not offered for the purpose of showing that the defendant had failed to call a codefendant as a witness is clear. It was not shown that the defendant had the power or the opportunity to call the codefendant as a witness. It was not shown that he was within the jurisdiction of the court so that he was amenable to process to bring him into court to testify. Under these circumstances the testimony did not tend to show failure to call an available witness. That the testimony was not offered for this purpose and that it did not tend to show anything of the kind, I think is clearly indicated by the comment of the district attorney in summing up. He said: "Wales is indicted jointly with the defendant in this indictment, charged with the same offense. Wales, whose family has lived in Haverstraw for years, whose wife and children are still living there, cannot be found." To this objection was made and the court said: "Well, the defendant said that during the last three weeks he hadn't been able to find him

Limit your statement to that." To this the defendant duly excepted.

The result of the admission of this testimony, and the comment of the district attorney, was to place the flight of Wales before the jury as an element which they might consider in determining the guilt of this defendant. This, in my opinion, so prejudiced the defendant's rights as to entitle him to a new trial. This court is also of the opinion that aside from this error a new trial should be granted under the powers conferred upon us by section 542 of the Code of Criminal Procedure.

The judgment of conviction should be reversed and a new trial granted.

KELLY, P. J., RICH, MANNING and KELBY, JJ., concur.

Judgment of conviction reversed upon the law and the facts and a new trial granted.