OPINION OF THE COURT
Peggy C. Davis, J.
This case involves a charge of delinquency brought as a result of the robbery of a bank. Evidence has been offered to show that because of his immaturity, the respondent, who was 9 years and 10 months old at the time of the alleged offense, could not — or did not — have a culpable mental state. The court is urged to apply the common-law rebuttable presumption that a child between the ages of 7 and 14 is incapable of mens rea or criminal intent (see 4 Blackstone’s Comm [1st ed, 1966 reprint], p 23.)[1] For reasons set forth below it is held that the presumption of infancy is inapplicable in delinquency cases and found that respondent committed the acts charged with the requisite state of mind.
In 1968 Sanford Kadish noted that “[t]he term ‘mens rea’ is rivalled only by the term jurisdiction’ for the varieties of *114 senses in which it has been used and for the quantity of obfuscation it has created.”[2] He proceeded to set out the helpful distinction between “mens rea in its special sense * * * [which] refers only to the mental state which is required by the definition of the offence” and “mens rea in the sense of legal responsibility”.[3] If, for example, a person takes something with the mistaken belief that it belongs to him, there is no mens rea in the special sense — no intent to steal — and therefore no crime. If the taker is under the age of seven or legally insane, there is no legal responsibility — no obligation to meet the requirements of law — and therefore no crime.
The complete defense of infancy (available at common law to children under seven)[4] and the presumption of infancy (which respondent seeks to apply here) concerned both kinds of mens rea. For there is reason to question whether the very young are capable of formulating a specific guilty intent and whether the very young should be held to an adult standard of legal accountability.
The latter concern seems to have been fully met by legislation which absolves children under seven of any legal responsibility for violation of the Penal Law and subjects children between the ages of 7 and 16 to the less severe penalties and lesser stigma of delinquency adjudication.[5] Counsel for respondent correctly notes that the minimum age for delinquency adjudication is lower than that recommended by the Juvenile Justice Standards Project.[6] However, the project standard “departs from the pattern of most existing laws and recent model acts which contain no *** [minimum age] limitation.”[7] Moreover, there is strong evidence that age seven is a significant milestone in physical and psychosocial development.[8] A review of the recent scientific evidence includes reference to
*115 “the remarkable fact that the chronological age of 7 ± 1 is referred to so frequently as to suggest a milestone marking discontinuous development * * * Indeed, the longer view of history and sociology of childhood *** indicates that empirically many cultures had already discovered the unique competence of 7-year-olds that permitted them to assume new roles not available when they were younger.
“Society seemed to know empirically when to begin its push on the child toward greater autonomy. During the Middle Ages, children were sent away from home to become pages at Court at age 7 *** and later, at the time of the Guilds, children were apprenticed at 7. In modern society children are considered to be ready for learning in, school at age 7 ±: grade school begins at 6 in the US, at 7 in the USSR. ‘[T]here is an implicit recognition by almost all cultures of two great stages, or transformations of development.’ These are the years of 5 to 7 and adolescence which respectively usher in and end the period of compulsory education. The Roman Church considers age 7 ‘the age of reason’ in that only then can the child differentiate between the bread of everyday life and the ‘host.’ * * * Moreover, in English Common Law, children under 7 are deemed incapable of criminal intent.”[9]
New York’s decision to charge seven, eight and nine year olds with limited legal responsibility is not, therefore, without basis.
The issue of specific intent appears to be more troublesome. The legislative scheme is based on an assumption that a child over seven is capable of forming a specific criminal intent, for surely the Legislature did not intend to create a system of strict liability for children. However, there may well be cases in which a child between 7 and 16 who is developmentally slow does in fact lack the capacity to form the requisite specific intent.[10] Appellate courts in at least two jurisdictions have, in the face of such cases, held that the common-law presumption of incapacity by *116 reason of infancy is applicable in all delinquency trials.[11] The first of these cases, and the record of “unanimous rejection of the infancy defense in delinquency proceedings by every court that * * * faced the issue * * * [before] 1970”, are reviewed in Fox, Responsibility in the Juvenile Court (11 William & Mary L Rev 659, 664-674) with the conclusion that the policy of protecting a “grossly immature” or “developmentally abnormal” child from delinquency adjudication makes good sense.[12] It does not, however, seem sensible to give the petitioner in every delinquency case involving a child under 14 the burden of overcoming a presumption that the respondent could not have had the requisite specific intent (Commonwealth v Vasquez, 255 PA Super Ct 545 [dissenting opn of Price, J.]).[13]
The petitioner in a delinquency matter does, however, have the burden of proving, beyond reasonable doubt, every element of the crime charged, including the element of intent. In this case it is asserted that respondent intended to play rather than to rob. An adult charged with robbery is entitled to acquittal if the prosecution fails to overcome, beyond reasonable doubt, evidence that he intended to play a practical joke rather than to rob (People v Stetz, 206 App Div 223). Respondent is entitled to the same protection. Moreover, if the respondent offers evidence that any combination of factors, including immaturity, negatives the requisite specific intént, he will be exonerated unless his evidence is overcome beyond reasonable doubt.[14]
*117 The application of these principles protects against imposition of undeserved punishment upon those who are “developmentally abnormal” or “grossly immature” without imposing a common-law presumption which is inappropriate in the usual case and inconsistent with the legislative scheme for the adjudication of juvenile offenses.
For reasons set forth in the appendix,[15] the court finds beyond reasonable doubt that respondent intentionally committed acts which would have been criminal had he been 16 or older.
Consideration of respondent’s age and mental state does not however end with that finding. A delinquency petition must allege that the respondent is in need of supervision, treatment or confinement.[16] If this allegation is not proved, the petition should be dismissed.[17] The Department of Probation is directed to investigate and report at a dispositional hearing on July 6, 1981. At that time the court will consider whether respondent’s violation of the Penal Law signals a need for court intervention and, if such a need is established, the kind of intervention required.

. Respondent relies upon Matter of Andrew M., 91 Misc 2d 813; see n 14, infra.

. Kadish, The Decline of Innocence, 26 Cambridge LJ 273.

. 26 Cambridge LJ, at pp 274, 275.

. 4 Blackstone’s Comm (1st ed, 1966 reprint), p 23.

. Penal Law, §30.00; Family Ct Act, §712.

. Institute for Judicial Administration/American Bar Association/Juvenile Justice Standards Project, Standards Relating to Juvenile Delinquency and Sanctions, p 14 (1980).

. Id., at p 16.

. Shapiro and Perry, Latency Revisited, The Age 7 Plus or Minus 1, 31 The Psychoanalytic Study of the Child 79-105. Moreover, there is evidence that “in the *115 majority of delinquents of antisocial character, the first signs of antisocial behavior appear between the ages of 7 and 9 years” (Friedlander, The Psychoanalytical Approach to Juvenile Delinquency, p 11 [1947]).

. Id., at pp 80-81 (ns and citations omitted).

. The question whether the insanity defense is available in New York delinquency cases is not raised by the evidence in this case.

. Commonwealth v Durham, 255 Pa Super Ct 539 (involving an act by a nine-year-old girl who suffered from borderline retardation); Matter of Gladys R., 1 Cal 3d 855, 869 (involving an “emotionally disturbed child of 12 years”).

. 11 William & Mary L Rev 659, 672.

. “[T]he law is that a child under the age of seven is conclusively presumed to lack the capacity to commit a crime, that a child between ages seven and fourteen is entitled to a rebuttable presumption of incapacity and when the age of fourteen is reached any special immunity or presumption of incapacity ceases. But these presumptions * * * have been applied where the child under discussion is being measured against adult standards *** That application I can accept. However, to make the application in juvenile proceedings is, to me, contrary to the whole concept of the creation of juvenile courts, which were created throughout the country in an attempt to depart from the traditional treatment of children as ordinary criminal defendants. Indeed, the use of presumptions concerning a child’s capacity to commit crime was earlier born of the same effort. The majority would give *** [a respondent] the benefit of both these efforts. I would not.”

. We do not reach the question whether in the case of a respondent near the age of six the circumstances of the crime and the age of the accused could, without more, raise a *117 reasonable doubt as to intent (see Matter of Andrew M., 91 Misc 2d 813, supra). For discussion of an analogous situation involving the insanity defense, see People v Woodworth (47 AD2d 991).

. In order to protect respondent’s privacy in this well-publicized case, discussion of the factual bases of the court’s finding is set forth in an unpublished appendix.

. Family Ct Act, § 731, subd 1, par (c).

. Family Ct Act, § 751.