## IN RE TYVONNE M.*
(13495)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 31—decision released May 9, 1989

* In accordance with the spirit and intent of General Statutes § 46b-142 (b)
and Practice Book § 2026, the names of the parties involved in this appeal
are not disclosed. The records and papers of this case shall be open for
inspection only to persons having a proper interest therein and upon order
of the Supreme Court.

Reporter of Judicial Decisions

*Brian S. Carlow,* assistant public defender, with whom, on the brief, was *Ann M. Guillet,* assistant public defender, for the appellant (respondent).

*Bruce A. Tonkonow,* state's advocate, for the appellee (petitioner).

GLASS, J. In this case we decide whether the common law defense of infancy applies to juvenile delinquency proceedings. The respondent appealed to the Appellate Court from an adjudication of delinquency, claiming that the trial court erred in denying his motion for judgment of acquittal. Pursuant to Practice Book § 4023, we transferred the case to ourselves. We find no error.

The relevant facts are not in dispute. The respondent was born on July 28, 1978. He lived with his mother, grandmother and two younger siblings in Hartford and attended the Clark Street School. On March 1, 1987, the respondent, who was eight years old, found a small pistol while he was playing in the school yard. He took the pistol and hid it under some papers in a hallway in building 38 of Bellevue Square. The following day he took the pistol to school and put it by a fence. He then went into the school and told another child about the pistol. Other children, including the victim, heard about the pistol. The victim told Tyvonne that she thought the pistol was a fake. After school, the respondent and the victim began arguing over whether the pistol was real. Several children examined the pistol and decided that it was a toy. The victim challenged

the respondent again by saying, "Shoot me, shoot me." The respondent exclaimed, "I'll show you it's real." He then pointed the pistol at the victim, pulled the trigger, and fired one shot, which struck and injured her. The respondent then swore at the victim, shouted that he had been telling the truth, and ran from the scene. Shortly thereafter he was apprehended and taken into police custody.

On March 3, 1987, the state filed a petition alleging five counts of delinquent[1] behavior arising from the shooting. On that date, the trial court appointed a public defender to represent the respondent, conducted a detention release hearing, and released the respondent to the care of his maternal grandmother. The trial court also ordered a psychological evaluation of the respondent. The hearing on the delinquency petition commenced on June 3, 1987. After the state completed its case on the first day, the respondent made an oral motion for judgment of acquittal, claiming that the state had introduced no evidence to rebut the common law presumption that children between the ages of seven and fourteen are incapable of committing a crime. The trial court reserved decision on the motion. On June 10, 1987, the respondent filed a written motion for judgment of acquittal including the claim asserted in the oral motion. On June 22, 1987, the trial court granted the respondent's motion for an examination to determine his competency.

When the hearing resumed on July 29, 1987, the report evaluating the respondent's competency was filed and proof of his competency was waived.[2] The trial

---

[1] General Statutes § 46b-120 provides in pertinent part: "[A] child may be found 'delinquent' (1) who has violated any . . . state law . . . ."

[2] The competency evaluation, dated July 13, 1987, was conducted by the diagnostic clinic of the department of mental health. The report concluded that it was the unanimous opinion of the clinical team that the respondent was able to understand the delinquency proceedings.

court then denied the respondent's motion for judgment of acquittal. At the completion of the hearing, the trial court made an adjudication that the respondent was a delinquent based on a finding that he had committed assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[3] The trial court dismissed the other counts. The trial court also ordered a preliminary investigation and a psychological evaluation of the respondent's mother and grandmother. At the disposition hearing on October 26, 1987, the trial court committed the respondent to the department of children and youth services (DCYS) for a period not to exceed four years.[4]

On appeal, the respondent assigns as error the trial court's denial of his motion for judgment of acquittal. He asserts that Connecticut's juvenile justice legislation does not expressly or implicitly eliminate the common law infancy defense from delinquency proceedings. He further argues that because the original goals of rehabilitation and remediation in the juvenile justice system have not been attained, there is no justification for excluding the infancy defense from juvenile delinquency proceedings. Consequently, he claims, the trial

[3] General Statutes § 53a-60 (a) (2) provides in pertinent part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument." Under General Statutes § 46b-120, assault in the second degree in violation of § 53a-60 is included in the category of offenses designated as a "serious juvenile offense."

[4] The respondent's attorney filed a petition with the trial court seeking an adjudication that the respondent was an "uncared for" child. See General Statutes § 46b-120 (uncared for child defined as one "who is homeless or whose home cannot provide the specialized care which his physical, emotional or mental condition requires"). The trial court found that the respondent was an uncared for child. In addition to the four year commitment based on the delinquency adjudication, the trial court ordered a commitment of eighteen months based on the adjudication that the respondent was an uncared for child.

court erred in not requiring the state to rebut the presumption that he was incapable of committing the offense underlying the delinquency adjudication. We are not persuaded.

## I

The respondent argues that, even though the legislature may abolish common law rules; *Pierce* v. *Albanese,* 144 Conn. 241, 250, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); statutes in derogation of the common law must be strictly construed. See, e.g., *State* v. *Nugent,* 199 Conn. 537, 548, 508 A.2d 728 (1986). He asserts that because the juvenile justice legislation is silent with respect to the common law infancy defense, the common law presumptions must apply to delinquency proceedings. *Commonwealth* v. *Durham,* 255 Pa. Super. 539, 389 A.2d 108 (1978). The state argues, however, that Connecticut's juvenile justice legislation implicitly abolishes the defense and, further, that application of the defense in delinquency proceedings would frustrate the legislation's remedial objectives.

"Down through the centuries the law has attempted to save offending children from the rigidity of the criminal law applicable to adults, but the history of the law has disclosed that such attempts were only sporadic and in many instances accomplished very little. As early as the fifth century B.C., the Twelve Tables (c. 488-451) made the theft of crops at night a capital crime, but a youthful offender could escape with a fine double the value and a flogging. The Romans promulgated the defense of *infantia* which provided absolute immunity for those children who were incapable of speech. Puberty was established as the upper limit of eligibility for mitigated treatment. Between infancy and puberty, criminal responsibility depended on a combi-

nation of three factors—the proximity of age to either infancy or puberty, the nature of the offense, and the mental capacity of the offender.

"By the seventeenth century, the Roman classification of criminal responsibility became the basis of the English common-law approach, so that children under seven were incapable of committing a crime while those between seven and fourteen were presumed incapable. Such presumption however was rebuttable by strong and clear evidence. Those [fourteen and over] were subject to the same criminal laws as were adults." D. Frauenhofer, A. Hart, J. Keefe, P. May, E. Sheehy, & T. Wilson, "Practice and Procedure of the Juvenile Court for the State of Connecticut," 41 Conn. B. J. 201, 206 (1967); see 1 W. LaFave & A. Scott, Substantive Criminal Law § 4.11 (a); see generally A. Kean, "The History of the Criminal Liability of Children," 53 L.Q. Rev. 364 (1937); A. Walkover, "The Infancy Defense in the New Juvenile Court," 31 UCLA L. Rev. 503 (1984). In a case decided after the enactment of Connecticut's juvenile justice legislation, we observed in dictum that the common law principles had applied to criminal prosecutions of children in Connecticut. *State v. Elbert,* 115 Conn. 589, 593, 162 A. 769 (1932); 2 Z. Swift, Digest p. 361.

The common law defense of infancy, like the defense of insanity, differs from the criminal law's requirement of "mens rea" or criminal intent. The law recognized that while a child may have actually intended to perform a criminal act, children in general could not reasonably be presumed capable of differentiating right from wrong. See A. Walkover, supra, 551. The presumptions of incapacity were created to avoid punishing those who, because of age, could not appreciate the moral dimensions of their behavior, and for whom the threat of punishment would not act as a deterrent. W. LaFave & A. Scott, supra. Although a number of states

have codified the common law rule by statute; see, e.g., Ariz. Rev. Stat. Ann. § 13-501; Minn. Stat. § 609.055; Or. Rev. Stat. Ann. 161.290; Wash. Rev. Code Ann. § 9A.04.050; W. LaFave & A. Scott, supra, § 4.11 (b); there is no statutory infancy defense in Connecticut. Cf. General Statutes § 53a-13 (lack of capacity due to mental disease or defect is affirmative defense).

The concept of juvenile delinquency did not exist at common law. In most states, including Connecticut, legislation was enacted that rendered children under a certain age liable as "delinquents" for committing acts that, if committed by an adult, would be criminal. Public Acts 1921, c. 336, § 1; A. Walkover, supra, 503 n.1. Chapter 336 of the 1921 Public Acts, which established Connecticut's juvenile justice system, is presently codified in chapter 815t of the General Statutes. Even though the Superior Court is Connecticut's trial court of general jurisdiction, and juvenile matters are heard in the Superior Court, juvenile proceedings are conducted separately from all other business of the Superior Court.[5] Delinquency is defined in General Statutes § 46b-120 as follows: "[A] child may be found 'delinquent' (1) who has violated any federal or state law or municipal or local ordinance . . . or (2) who has violated any order of the superior court . . . ." An important feature of the legislation since its inception is presently expressed in General Statutes § 46b-145, which provides: "No child shall be prosecuted for an

[5] General Statutes § 46b-122 provides: "All matters pending in the juvenile court on July 1, 1978, and all matters brought on or after July 1, 1978, which matters are juvenile matters, as defined in section 46b-121, shall continue to be kept separate and apart from all other business of the superior court as far as is practicable, except matters transferred under the provisions of sections 46b-126 and 46b-127, which matters shall be transferred to the regular criminal docket of said superior court. Any judge hearing a juvenile matter shall, during such hearing, exclude from the room in which such hearing is held any person whose presence is, in the court's opinion, not necessary. No such hearing shall be held in a room regularly used for the transaction of criminal business."

offense before the superior court, nor shall the adjudication of such court that a child is delinquent in any case be deemed a conviction of crime except as provided in sections 46b-126 and 46b-127."[6] See Public Acts 1921, c. 336, § 18.

Shortly after the creation of the juvenile justice system, we addressed the issue whether a delinquency proceeding is tantamount to a criminal prosecution. *Cinque* v. *Boyd,* 99 Conn. 70, 121 A. 678 (1923). In that case, we stated that "the Act [creating the juvenile justice system] . . . is not of a criminal nature . . . . " Id., 89. "The Act is but an exercise by the State of its . . . power over the welfare of its children," and a juvenile subjected to delinquency proceedings "[is] tried for no offense," but "[comes] under the operation of the law in order that he might not be tried for any offense." Id., 87; see Public Acts 1921, c. 336, § 3. Since the *Boyd* case, we have on several occasions recognized that, consistent with § 46b-145, juvenile proceedings are fundamentally different from criminal proceedings. *In re Christopher V.,* 207 Conn. 270, 274, 540 A.2d 700 (1988); *Anonymous* v. *Norton,* 168 Conn. 421, 424–25, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975); *In re Appeal of Bailey,* 158 Conn. 439, 445, 262 A.2d 177 (1969); *Tracy* v. *Johnson,* 156 Conn. 630, 632, 239 A.2d 477 (1968).

The rehabilitative nature of our juvenile justice system is most saliently evidenced by the statutory provisions pertaining to the disposition of delinquent juveniles. Under General Statutes § 46b-134, the trial court may not render a disposition of the case of any delinquent child until the trial court receives from the probation officer assigned to the case a comprehensive

---

[6] The exceptions refer to juvenile cases subject to transfer to the regular criminal docket. See General Statutes §§ 46b-126 and 46b-127 (providing, inter alia, that juvenile subject to transfer must have been fourteen years of age at time underlying offense was committed).

background report on the child's characteristics, history and home life. The disposition of a child found delinquent for a serious juvenile offense may be made only after the court receives a complete evaluation of the child's physical and psychological health. General Statutes § 46b-134; see Practice Book § 1037 (1) (no disposition may be made until § 46b-134 report submitted to court). General Statutes § 46b-140 (a) provides in part that upon an adjudication of delinquency, the trial court may place the juvenile "in the care of any institution or agency which is permitted by law to care for children, order the child to remain in his own home or in the custody of a relative or any other fit person subject to the supervision of the probation officer or withhold or suspend execution of any judgment." The court may also order the juvenile to perform public service or to make restitution when appropriate, provided that the child and his parent or guardian consent to such an order. General Statutes § 46b-140 (a).

Significantly, commitment of the child to DCYS may be made only if the court finds that "its probation services or other services available to the court are not adequate for such child . . . ." General Statutes § 46b-140 (b). Prior to any such commitment, however, the court must "consult with [DCYS] to determine the placement which will be in the best interest of such child." General Statutes § 46b-140 (b). When the trial court determines that a commitment must be made, it may commit the child to DCYS for an indeterminate period not to exceed two years, or in the case of a child found delinquent for committing a serious juvenile offense, for an indeterminate period not to exceed four years. General Statutes § 46b-141 (a).[7] DCYS may petition for an extension of the commitment of a child originally committed for two years. An extension may not

---

[7] In the present case, the respondent has not challenged the trial court's factual basis for committing the respondent to DCYS for four years.

exceed an additional two years, and may only be ordered when, after a hearing, it is found to be in the best interests of the child. General Statutes § 46b-141 (b).

Several other provisions of the General Statutes and the Practice Book delineate fundamental distinctions between delinquency and criminal proceedings. For example, Practice Book § 1034 (1) provides that a juvenile delinquency hearing "shall not be conducted as a criminal trial; the proceedings shall be at all times as informal as the requirements of due process and fairness permit." Further, unlike the records of convicted criminals, the records of juvenile delinquency proceedings generally are confidential. Compare General Statutes c. 961a with General Statutes § 46b-124.

"In ascertaining legislative intent, we may look to the history of the statute, the policy underlying it and the circumstances which brought about its enactment. . . . In construing a statute, common sense must be used and we must assume that the legislature intended to accomplish a reasonable and rational result. . . . A statute, of course, is not to be interpreted to thwart its purpose. . . . 'We can best reach the meaning here, as always, by recourse to the underlying purpose . . . .' " (Citations omitted.) *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985).

It is clear from our analysis that the purpose of the comprehensive statutory treatment of "juvenile delinquents" is clinical and rehabilitative, rather than retributive or punitive. As we recently observed in *In re Christopher V.,* supra, 274, "[t]he objective of juvenile court proceedings is to 'determin[e] the needs of the child and of society rather than adjudicat[e] criminal conduct. The objectives are to provide measures of guidance and rehabilitation . . . not to fix criminal responsibility, guilt and punishment.' *Kent* v. *United States,* 383 U.S. 541, 554, 86 S. Ct. 1045, 16 L. Ed.

2d 84 (1966); but see *In re Luis R.,* 204 Conn. 630, 634–35, 528 A.2d 1146 (1987). Thus the child found delinquent is not perceived as a criminal guilty of one or more offenses, but rather as a child in need of guidance and rehabilitative services." In effect, the statutes regulating juvenile misconduct represent a system-wide displacement of the common law.

With the enactment of juvenile justice legislation nationwide, several courts have addressed the issue whether the infancy defense applies to delinquency proceedings. Most have held that, in the absence of legislation codifying or adopting the defense, incapacity is not a defense in delinquency proceedings. See, e.g., *Jennings* v. *State,* 384 So. 2d 104, 106 (Ala. 1980); *Gammons* v. *Berlat,* 144 Ariz. 148, 151-52, 696 P.2d 700 (1985); *State* v. *D.H.,* 340 So. 2d 1163, 1165 (Fla. 1976); *In the Matter of Robert M.,* 110 Misc. 2d 113, 116, 441 N.Y.S.2d 860 (1981); *In re Michael,* 423 A.2d 1180, 1182 (R.I. 1981); *In the Matter of Skinner,* 272 S.C. 135, 137, 249 S.E.2d 746 (1978); see also W. LaFave & A. Scott, supra, § 4.11 (c). These courts observe that because a delinquency adjudication is not a criminal conviction, it is unnecessary to determine whether the juvenile understood the moral implications of his or her behavior. See, e.g., *Gammons* v. *Berlat,* supra, 151; *In re Michael,* supra, 1183. In addition, some decisions recognize that the defense would frustrate the remedial purposes of juvenile justice legislation. See, e.g., *Jennings* v. *State,* supra, 105–106; *State* v. *D.H.,* supra.

Because Connecticut's juvenile justice system is designed to provide delinquent minors with guidance and rehabilitation; *In re Steven G.,* 210 Conn. 435, 443, 556 A.2d 131 (1989); *In re Christopher V.,* supra; we agree with the courts that hold that the common law infancy defense, created to protect children from being punished as criminals, has no place in delinquency proceedings. See *Gammons* v. *Berlat,* supra; *In re Michael,*

supra, 1183; *In the Matter of Skinner,* supra; see also
W. LaFave & A. Scott, supra, § 4.11 (c). We also agree
that the legislature could decide that the infancy
defense would unnecessarily interfere with the state's
legitimate efforts to provide structured forms of guid-
ance for children who have committed acts of delin-
quency. See *Jennings* v. *State,* supra; *State* v. *D.H.,*
supra. It could conclude that the defense inevitably
would exclude those children most in need of guidance
from a system designed to instill socially responsible
behavior.[8] *Jennings* v. *State,* supra. To construe the
legislature's silence as indicating an intent to preserve
the infancy defense in delinquency proceedings is
unwarranted in light of the legislation's obvious and
singular remedial objectives. *Gentry* v. *Norwalk,* supra.
We are not persuaded that recognition of the defense
would advance the interests of either the child or
society.[9]

## II

Relying on a number of decisions in other states, how-
ever, the respondent argues that the rehabilitative
objectives of juvenile justice have become defunct, and

[8] The respondent argues that the rehabilitative purposes of the statutory
scheme would be served in the present case without an adjudication of delin-
quency because the trial court also adjudicated the respondent an "uncared
for" child, and made an appropriate disposition thereon. See footnote 4,
supra. We disagree with the respondent, however, that an adjudication of
"uncared for" status presents the trial court with "an almost identical range
of dispositional options." Compare General Statutes § 46b-140 and 46b-141
with General Statutes § 46b-129. Further, under General Statutes § 46b-120,
it is obvious that the two adjudications do not necessarily overlap. The statu-
tory scheme does not require the trial court to dismiss a delinquency peti-
tion, or to suspend a disposition on an adjudication of delinquency, whenever
the court renders a concurrent adjudication of "uncared for" status. We
decline to create such a requirement by judicial ukase.

[9] Nothing in this opinion should be construed to deter the legislature from
considering the desirability of a floor for such juvenile proceedings in recog-
nition of the fact that the clinical and rehabilitative needs of a four or eight
year old are different from those of a fourteen or fifteen year old.

cannot justify excluding the infancy defense from delinquency proceedings. Most of the decisions holding the infancy defense applicable to juvenile proceedings have been based on specific legislation adopting the defense, and therefore are irrelevant to the present case. See, e.g., *In re Gladys R.*, 1 Cal. 3d 855, 863, 464 P.2d 127, 83 Cal. Rptr. 671 (1970); *K.M.S.* v. *State,* 129 Ga. App. 683, 685, 200 S.E.2d 916 (1973); *State* v. *Q.D.,* 102 Wash. 2d 19, 23, 685 P.2d 557 (1984); *State* v. *S.P.,* 49 Wash. App. 45, 46, 746 P.2d 813 (1987).

Some courts, however, have held that even absent pertinent legislation, the common law infancy defense applies to delinquency proceedings. *In re William A.,* 313 Md. 690, 698–99, 548 A.2d 130 (1988); *In the Matter of Andrew M.,* 91 Misc. 2d 813, 815–16, 398 N.Y.S.2d 824 (1977); *Commonwealth* v. *Durham,* supra, 541–42. These courts advance the notion that the United States Supreme Court decisions in *Kent* v. *United States,* supra; *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), and *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), reflect the evolving reality that the true objectives of juvenile justice legislation are not rehabilitation and treatment, but accountability and punishment. *In re William A.,* supra, 698; *Commonwealth* v. *Durham,* supra; A. Walkover, supra, 517–23.

*Kent, Gault* and *Winship* establish that the state may not suspend fundamental protections of due process in juvenile proceedings. A particular procedure must be followed if it is required as a matter of "fundamental fairness." *McKeiver* v. *Pennsylvania,* 403 U.S. 528, 543, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971); *In re Steven G.,* supra. The precise principle emerging from *Kent* and *Gault* is that states may not rely on superficial exhortations of "rehabilitation" to justify *procedural* arbitrariness in delinquency proceedings. *McKeiver* v. *Pennsylvania,* supra, 541; *Kent* v. *United States,* supra,

555–56. As the court observed in *Gault,* "[j]uvenile Court history has again demonstrated that unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure." *In re Gault,* supra, 18; see also *In re Winship,* supra, 364 (application of reasonable doubt standard to juvenile delinquency proceedings ensures integrity of fact-finding process).

The respondent does not argue that the United States Supreme Court's juvenile decisions require the common law incapacity defense in delinquency proceedings as a matter of fundamental constitutional fairness. Cf. *Jennings* v. *State,* supra, 106. Nor does he suggest that the exclusion of the incapacity defense introduces procedural arbitrariness. Instead, the respondent gleans from those cases the proposition that since the juvenile justice system punishes rather than rehabilitates, there is no good reason not to recognize incapacity as a defense. We are not persuaded, however, that *Kent* and *Gault* warrant the proposition that the respondent discerns.

We acknowledge that the United States Supreme Court has opined that the rehabilitative goals of the various state juvenile courts have often not been attained. *McKeiver* v. *Pennsylvania,* supra, 543–44; *In re Gault,* supra, 22. The court has made it quite clear that states may not deny juveniles fundamental due process rights simply by labelling delinquency proceedings "civil," or by asserting that the purpose of delinquency proceedings is rehabilitative. *In re Gault,* supra, 30; see also *In re Steven G.,* supra; *Anonymous* v. *Norton,* supra, 425. Thus, the parens patriae doctrine does not support inroads on basic constitutional guarantees simply because a state claims that its juvenile justice system is "rehabilitative" rather than "punitive." The United States Supreme Court, however, has expressly refused to hold that the rehabilitative goals of the var-

ious systems of juvenile justice may under no circumstances justify appropriate differential treatment of a child adjudicated a delinquent. *McKeiver* v. *Pennsylvania,* supra, 550; *In re Gault,* supra; *Kent* v. *United States,* supra, 562. Further, the court has never suggested that such differential treatment, based on the juvenile justice systems' fundamentally nonpunitive objectives, is intrinsically illegitimate. "We are reluctant to say that, despite disappointments of grave dimensions, [the juvenile justice system] does not hold promise, and we are particularly reluctant to say . . . that the system cannot accomplish its rehabilitative goals. So much depends on the availability of resources, on the interest and commitment of the public, on willingness to learn, and on understanding . . . . We are reluctant to disallow the States to experiment further and to seek in new and different ways the elusive answers to the problems of the young . . . ." *McKeiver* v. *Pennsylvania,* supra, 547.

We do not discern in *Kent* and its progeny an abandonment of the rehabilitative focus of juvenile justice. The respondent has not presented us with any grounds for concluding that the rehabilitative objectives of Connecticut's juvenile justice system are contradicted in practice. We therefore decline to adopt the somewhat cynical view expressed by some writers that the ideals of the juvenile justice system are now bankrupt, and have necessarily succumbed to the corrosive effects of institutionalization. See A. Walkover, supra.

Further, we are not persuaded by the respondent's argument that the statutory treatment of juveniles who commit "serious juvenile offenses" requires a conclusion that there is no genuine difference between juvenile and criminal proceedings. The four year maximum commitment term for serious juvenile offenders under General Statutes §§ 46b-140 and 46b-141 certainly contemplates the possibility of a serious restriction on the

juvenile's liberty. But as we have already observed, any commitment order must be predicated on a determination that other options not involving commitment are inadequate to address the child's needs. General Statutes § 46b-140 (b). In addition, placement of the child in a program or facility must be based on the child's best interests. General Statutes § 46b-140 (b). We cannot infer from these provisions a legislative intent to inflict retribution on the serious juvenile offender.

Finally, we reject the respondent's argument that the common law presumption should apply in this case because the offense charged was a serious juvenile offense. We acknowledge that the commission of a serious juvenile offense is a prerequisite to the transfer of a juvenile case to the Superior Court criminal docket. General Statutes §§ 46b-126 and 46b-127. Another prerequisite to such a transfer, however, is that the child must have committed the offense after attaining the age of fourteen. General Statutes § 46b-126 and 46b-127. In the present case, the respondent was eight years of age at the time of the predicate offense.

There is no error.

In this opinion the other justices concurred.